# Richmond

T. F. WILLIAMS v. C. E. KENDRICK AND P. J. REYNOLDS.

March 4, 1946.

Record No. 3008.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and
Spratley, JJ.

The opinion states the case.

*Fred C. Parks, E. W. Potts* and *T. L. Hutton,* for the appellant.

*Thomas C. Phillips,* for the appellees.

HOLT, J., delivered the opinion of the court.

Under review is a disputed right of way.

A. W. Aston was an owner of much land in Washington county, among which was a valuable farm near Meadowview, formerly owned by Laura J. Stuart. In 1923, he found it desirable or necessary to sell a portion of his holdings and had this Meadowview farm surveyed and platted. That plat was duly recorded. The farm itself was divided into numbered lots. A sale at public auction was set for August 18, 1925, was widely advertised and was had on that date. Such sales as might be made were to be confirmed by the owner and no sales not so confirmed were to take effect, and that the auctioneer stated. There were actually sold to E. M. Kendrick, and confirmed, Lots Nos. 29 to 33, inclusive.

The deed from Aston to Kendrick bears date August 18, 1925, was acknowledged on September 21, 1925, and forthwith recorded. This is a description of the land conveyed:

"Beginning at a point in the Southern line of the Norfolk and Western Railway and E. M. Kendrick's other lands, thence with the line of said Kendrick's other land S 27¾ E 1440 ft. to a stake, corner to said Kendrick's other land, thence with said Kendrick's line S 63½ W 726 feet to a stake on Kendrick's line, thence with said Kendrick's and H. L. Browning's line S 24 E 1787 feet to a stake, Southwest corner of land hereby conveyed, thence N 57½ E 916½ feet to a post in Aston's line, thence with said Aston's line N 68½ E 445½ feet to a stake in said Aston's line, Southeast corner of land hereby conveyed, thence N 38¼

W 1004 feet to the center of the Southern terminus of a proposed twenty foot road, shown on recorded map, thence with the middle of said twenty foot road and the Western line of Wiley Darnell N 34½ W 1570 feet to a point in the middle of said twenty foot road, thence with the middle of said road N 28 W 200 feet to a stake, Southwest corner of Lot No. 32 on said map, thence with Southern line of Lots Nos. 32, 31 and 30 N 70 E 522½ feet to the Northwest corner of W. A. McCracken's lot, thence with McCracken's Northern line N 62½ E 163 feet to a stake, Southeast corner of Lot No. 29 on said map, thence N 30 W 375 feet to a stake in the Southern line of the Norfolk and Western Railway, thence with said Southern line of the Norfolk and Western Railway S 71 W 818½ feet to the beginning, containing Fifty Seven acres (57 A.), be the same more or less."

The consideration there expressed was $7,187.50, of which $2,687.50 was paid in cash, the balance to be paid in three equal annual installments of fifteen hundred dollars, for which a vendor's lien was retained.

On the same day, August 18, 1925, there was sold to Wiley Darnell a tract of 9.85 acres, made up of lots 27 and 28 on this plat. The land so conveyed is thus described:

"Beginning at a stake, N. W. corner of W. A. McCracken's land; thence with line of said McCracken, D. G. Ritchie, the Colored Cemetery and Walker Sanders S 24½ E 946 feet to a stake, corner to Sanders and A. W. Aston, thence S 63½ W 358 feet to the center of a twenty foot (20 ft.) road, thence with the center of said road, N 34½ W 830 feet to a stake in the center of said road, thence N 28 W 200 feet to a stake in the center of said road, Southwest corner of Lot No. 32 in map of a portion of the Laura J. Stuart farm, thence with the southern lines of Lots Nos. 32, 31 and 30 on said map running N 70¾ E 522½ feet to the beginning, containing nine and eighty-five hundredths acres (9.85 A.), be the same more or less."

From which it is plain that the proposed 20-foot road, bounded on the southeast by Lots Nos. 32, 28, 27 and 37

and on the northeast by Lot 33, is definitely established. This 20-foot proposed road continues to the southeast until it reaches a 30-foot road marked on this plat, which 30-foot road runs across the unsold portion of the Aston farm in a northeasterly direction. One of the purposes of this suit is to open this 30-foot road which on said map touches Lot 33, bought by Kendrick.

Before the sale to Kendrick was confirmed and before a deed to him was delivered, Aston was asked and replied:

"Q. When you confirmed the sale was any statement made to the purchaser as to how the sale was confirmed? If so, what statement was made?

"A. I don't remember the statement verbatim, but we were naturally—I was, and I will say we, too, because I had talked the matter over closely with Cumbow so as not to have any possibility of any mistakes as to the rights of way that might be provided, or mistake as to any road—what I had in mind then, and had in mind to make clear, was that I was on guard to protect myself against any possibility of having any rights of way through the land that was left, and I remember instructing Cumbow to make the announcement clearly along that way, but I don't remember his wording of it."

Not only was this statement made to this purchaser when his sale was confirmed, but convincing reasons also for the reservations were pointed out. Kendrick said at the sale, as an inducing cause, attention was called to the roadways which appeared on the plat, particularly to the 30-foot road marked out but not improved, which led from the south end of the 20-foot proposed lane. Kendrick does not deny that such a statement was made to him when the deed was delivered. When that deed was delivered, he saw that nothing was said about the right of way through the unsold lands but "thought" that right was given.

Counsel for Kendrick relies upon Code, section 5219, which tells us the effect of recording plats. Sections 5217 and 5218 show that the matters there dealt with are lots,

etc., laid out in cities and towns, but this case does not turn upon Code sections.

The roadway laid out on the plat of 1925 is a farm roadway across a portion of the farm which the plat itself shows was not sold.

This was the situation in 1925, and it continued unchanged until 1929. In October of that year, Aston had platted that portion of the Stuart farm "Not Sold," together with lands jointly owned by him and his sister, Mary E. Aston. On this second plat appears another 30-foot road, leading in a northerly direction from the Lee Highway to the northeast corner of Lot 33, where it bends to the east, along Lot 28, owned jointly by Williams and Reynolds.

Suit was brought by Kendrick in November, 1934. T. F. Williams was made party defendant. His answer is dated November 10, 1937. Matters drifted and nothing was done. The cause was dropped from the docket but was reinstated by order of November 29, 1939. No evidence in support of Kendrick's claim was taken until 1941.

The evidence in this case is in the form of depositions, and while the judgment of the trial court is entitled to great respect, its weight differs from that in causes in which testimony is heard *ore tenus*.

The road, as laid out, was for the benefit of lots offered for sale at the 1925 auction but not sold. Aston continued to use his farm, from which only about 57 acres had been cut off, for agricultural purposes and plowed under the "paper road" along with that marked "Not Sold"—all in the plain view of Kendrick, who was a near neighbor.

This situation continued from 1925 to 1929. In 1929, Williams came into the picture, as we shall see, with his intervening rights, which were not challenged until 1934. That is to say, Kendrick for nine years made no protest, during all of which time, he tells us, he was deprived of vital rights. His bill was filed in 1934, was dropped from the docket for want of prosecution and later reinstated. Evidence in support of his claim was first offered in 1941—

sixteen years after he had been shut off from the use of a highway which he contends was both valuable and necessary.

Independent of any statute of limitations, these facts served to support the Williams claim, which is that the sale to Kendrick was subject to confirmation, and that Kendrick understood that he took no interest in lands unsold. If all that he claims as to the effect of a recorded plat applies to farm lands as well as to streets and alleys, they do not apply to one who accepted a deed with the understanding that they were not to apply to him. Even constitutional rights may be waived; and for a stronger reason, one may waive or abandon private rights. This road was not dedicated to the public, was not accepted by it, and never used by it. Plainly any rights which Kendrick may have ever had were private rights. 17 Am. Jur., p. 1026, sec. 142, and Minor on Real Property, 2d Ed., Vol. 1, sec. 106.

Reynolds' rights stem back to the auction sale of 1929, by which his rights are fixed. He filed his petition on July 23, 1942, and then owned the following lots shown on the plat of the sale of 1929: Lots 9, 10 and 27, and one-half of Lot 28, which came to him in this wise:

By deed of date November 7, 1929, A. W. Aston and Mary E. Aston conveyed to Johnson Reynolds and Phillip J. Reynolds said Lots 9, 10 and 27, and on November 24, 1930, Johnson Reynolds conveyed to Phillip J. Reynolds an undivided half interest in said lots.

By deed of date November 7, 1929, A. W. Aston and Mary E. Aston conveyed to Charles H. Hearon Lot 28.

By deed of date February 21, 1930, Hearon and wife conveyed to Phillip J. Reynolds one-half interest in Lot 28, and by a partition deed of date March 19, 1930, Reynolds and Williams divided this lot between them.

Reynolds took nothing under the auction sale of 1925; he does not even appear to have been then present. On the plat of that year is marked a 30-foot road, and on the plat of 1929 is also marked a 30-foot road, but the road of 1925 does not appear on the plat of 1929, and these two roads do not coincide and do not touch each other.

Not only does the road on the first plat not appear on the second, but the land covered by it was actually under cultivation; and that Reynolds might have seen, for he was present at the second sale. Moreover, the first plat was then of record and across that portion of Aston's lands not sold to Kendrick is marked "Not Sold", from which it is clear that Reynolds has no rights which can be traced back to the plat of 1925.

From the time of his purchase, Reynolds undertook to make plain the fact that this paper roadway was to be no thoroughfare—at least through his property. Soon after he and Williams took over their purchases, they placed in the center of the second road (second plat) near the south corners of Lots 33 and 28 a post and from it, south, they built a fence to the Lee Highway, which gave to each of them a fifteen-foot road—a private road on private land. These lanes were kept as they were until mud called for relief. Pavement of some kind was necessary, and since it was cheaper to pave one lane than two, this line fence was taken down. For that reason, and no other, a lane along this road was "rocked." But that post so placed still stands there, and the road to its north has never been opened. It is not contended that it has been opened to or used by the public. From this post north for three or four rods, which was as far along Lot 28 (after partitioning) as Reynolds' interest in that lot went, is a wire fence put there by Reynolds and Williams, which Reynolds says "is a line fence," and is still there.

After Lot 28 was partitioned, Williams owned both sides of the roadway in dispute, except three or four rods of its south boundary above the post. While their relations were amicable, Williams continued to let Reynolds from time to time drive stock across what was then his property and to casually haul farm products. But that was a permissive use. Such claim of right as these co-terminus owners may once have had in this 1929 roadway from the post north were abandoned by consent, and this they had the right to do.

 Reynolds, who blocked this highway by planting a

post in its center; who, with Williams, built a wire fence down its center to the Lee Highway, and who, with Williams, also built a fence north from this post along what he calls the center line to the end of his holdings, now contends that this was and is a public road. Indeed, he contends that both roads on both plats are public roads, and he would re-establish them across Williams' land. His claim is without merit. Kendrick never had any claim, and such claim as Reynolds ever had, he is estopped from asserting. Moreover, he has waited for fourteen years.

Neither the road claimed by Kendrick nor the road claimed by Reynolds are roads of necessity.

*Reversed.*