# Richmond

KATHERINE D. LINDSAY, ET ALS. v. ELIZABETH STUART JAMES.

January 10, 1949.

Record No. 3396.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

*William L. Parker* and *Richard B. Kellam*, for the appellants.

*Willard R. Ashburn* and *Wm. G. Maupin*, for the appellee.

HUDGINS, C. J., delivered the opinion of the court.

In 1926, Martha Miller Masury subdivided a tract of land lying north of the town of Virginia Beach in Princess Anne county, bounded on the east by the Atlantic Ocean, on the south by 51st street, on the west by Holly avenue

and Holly boulevard and on the north by 58th street. The plat of the subdivision, called "Ubermeer," was acknowledged and duly recorded. It shows that the subdivision contains blocks numbered from 1 to 16 inclusive, four hundred and seventy-five lots, with certain areas laid out as streets, alleys and ways. A rough sketch, not drawn to scale, of the pertinent parts of the plat is filed herewith as a part of this opinion.

All of the lots in Blocks 6 and 7 were conveyed to the Roymar Corporation. On January 24, 1936, it conveyed to Elizabeth Stuart James all of Block 7, lying west of the twenty-foot Way, which includes Lots 8 to 21, inclusive, with a fifteen foot alley in the rear as shown on the sketch.

In the spring of 1936, Roymar Corporation sold all lots in Block 6 to the Surf Beach Club, and in the conveyance, bearing date on August 1, 1937, described the property by the lot and block numbers as shown on the plat of Ubermeer.[1] (See foot note for exact language.)

H. L. Lindsay and Pretlow Darden, president and secretary of the Surf Beach Club, acting for the corporation, in the spring of 1936, before acquiring the deed, began an extensive improvement of the property lying within Block 6. One or more of the buildings erected extended across

---

[1] "All those certain lots, pieces or parcels of land, together with the buildings thereon and the appurtenances thereunto appertaining, situated in Princess Anne County, Virginia, consisting of lots one (1) to nineteen (19), both inclusive, in Block six (6) as shown on the plat of 'Ubermeer' which plat is duly recorded in the Clerk's Office of the Circuit Court of Princess Anne County, Virginia, in Map Book 7, page 150, said lots being all of the lots in Block six (6), and being of the size and dimensions as shown on said plat, said block being bounded on the East by Atlantic Boulevard, on the North by 57th street on the West by Atlantic Avenue, and on the South by 56th street, as shown on said plat, together with all of the right, title and interest of the party of the first part including riparian rights in and to the land lying East of Block six (6) and running down to Atlantic Ocean included within an area between the prolongation on the North side of 57th Street in an Easterly direction to the Atlantic Ocean on the North and the prolongation on the Southern side of 56th street in an Easterly direction to the Atlantic Ocean on the South, also. All the right, title and interest of the grantor herein named, in and to the lanes, alleys in said Block and also in and to 57th Street, 56th Street, Atlantic Avenue and Atlantic Boulevard, as shown on said plat."

the twenty foot way, and bath houses or cabanas were built across the east end of 57th street. By deed dated December 31, 1942, the Surf Beach Club conveyed to Katherine D. Lindsay and Pretlow Darden, all the lots in Block 6, and a part of Lot 4, and all of Lots 5, 6 and 7 in Block 7, describing the lots as they appeared on the plat of Ubermeer. Lot 7 in Block 7 adjoins the north line of 57th street and all the lots conveyed in Block 7 front on the ocean and extend west to the twenty foot way.

Mrs. James conveyed to other parties several of her lots in Block 7, but at the institution of the suit owned, among others, Lots 15, 16 and 17, on which she had erected two or more dwellings. Her total investment in the lots and improvements in this block is more than $50,000.00. Lots 15, in Block 7, is bounded on the east by the twenty-foot way, on the south by 57th street, and on the north by the fifteen foot alley.

A controversy arose between Mrs. James and Mr. Lindsay over the obstruction of the east end of 57th street. It was alleged that the street was forty feet wide and that thirty-five feet of it was obstructed. Mrs. James claimed that Mr. Lindsay failed to remove the obstructions as he had agreed to do, and so in January, 1946, she instituted suit against the owners praying that they be compelled to remove buildings and other obstructions across 57th street. The respondents named in that suit agreed to remove all their building from 57th street, and upon motion of Mrs. James, the suit was dismissed, but without prejudice to her. The decree of dismissal stated that she might institute further proceedings for relief if she was so advised. Parts of the obstructions in 57th street were removed but some of them were not, and this suit was instituted at Second May Rules, 1946, to compel the removal of the structures partially blocking 57th street, and those wholly blocking the twenty-foot way. The trial court entered a mandatory decree requiring respondents to remove the obstructions both in 57th street and in the twenty-foot way. From that decree they obtained this appeal.

Appellants concede that 57th street is a public thorough-fare and that they have no right to obstruct it. They con-centrate their attack upon that part of the decree requir-ing them to remove permanent buildings obstructing the twenty-foot way.

Atlantic avenue, as shown on the sketch, is 100 feet wide, hard-surfaced and smooth-paved, and is the main thorough-fare for north- and south-bound traffic through the town of Virginia Beach to Cape Henry. 58th street is thirty feet wide, hard-surfaced and paved from Atlantic avenue to the twenty-foot way. 57th street, a block south of 58th street, is 40 feet wide, hard-surfaced and paved from Atlantic avenue to the twenty-foot way. 56th street is south of 57th street and is parallel with it, but it is not paved and not open to motor vehicle traffic. The twenty-foot way is hard-surfaced and paved between 58th and 57th streets. It is unimproved from 57th street across 56th street to the middle of Block 5.

It does not appear that either the county or the highway officials have accepted the offer of dedication of the streets and alleys on the plat of Ubermeer. Under these circum-stances, the provisions of Code, section 5219, are applicable, the pertinent part of which provides that the fact of recordation "shall operate to create a public easement or right of passage over such portion of the premises platted as is on such plat set apart for streets or other public use * * *." However, the rights of the public are not involved in this litigation, but only the private right of an owner who has acquired a lot in a subdivision, the plat of which shows certain areas laid out as streets and alleys.

The decisions in other jurisdictions are in conflict as to the extent of the easement in the streets and alleys created by grant with reference to a map or plat. It is held in some jurisdictions that a grantee acquires an ease-ment as to all of the streets shown on the plat, and in other jurisdictions the easement is limited to the adjoining streets and such other streets as are necessary to give the grantee access to a public highway. 28 C. J. S., Easements, sec. 39, p.

703. A third view, and the one adopted in this jurisdiction, limits the extent of easements of this nature to such streets and alleys shown on the plat as are reasonably beneficial to the grantee, and a deprivation of which would reduce the value of his lot. In any event, such grantee is entitled to an easement in streets and alleys adjoining his lot. *Taylor* v. *Commonwealth*, 29 Gratt. (70 Va.) 780, 783; *Cook* v. *Totten*, 49 W. Va. 177, 38 S. E. 491, 87 Am. St. Rep. 792; 17 Am. Jur., Easements, sec. 47, p. 958; West's Virginia & W. Va. Dig., Easements, Key No. 17(4), p. 726; *Sipe* v. *Alley*, 117 Va. 819, 86 S. E. 122; *Payne* v. *Godwin*, 147 Va. 1019, 133 S. E. 481; *Williams* v. *Kendrick*, 184 Va. 1076, 37 S. E. (2d) 8; *Walters* v. *Smith*, 186 Va. 159, 41 S. E. (2d) 617; *Magee* v. *Omansky*, 187 Va. 422, 46 S. E. (2d) 443.

Appellee contends that the decision in *Sipe* v. *Alley*, *supra*, is decisive of the issue. Appellants contend that this decision has been modified by subsequent decisions and that the rule in Virginia is that the easement in question extends only to the streets and alleys laid out on the plat which are reasonably necessary for the use of the owners of the particular lot. Neither of these contentions is quite correct.

In the *Sipe Case* the owner recorded a plat subdividing his tract of land adjacent to the town of Graham, Tazewell county, into lots, streets and alleys. Sipe and others bought 13 lots in section 33, bounded by Greever avenue, Wesley street, Calvin street and Tazewell avenue. Alley acquired a corner lot in this block, bounded by Calvin street, and another lot across the street in another block. He proceeded to obstruct Calvin street between his lots. Sipe and others, who owned lots fronting on Calvin street and within section 33, obtained a mandatory injunction requiring Alley to remove the obstructions. This court, in 117 Va. 819, at page 822, quoted with approval the general rule as follows: "When lands are laid off into lots, streets and alleys and a map or plat thereof is made and recorded, all lots sold and conveyed by reference thereto, without reservation, carry with them, as appurtenant thereto, the right to the use of

the easement in such streets and alleys necessary to the enjoyment and value of said lots."

While the court in its discussions indicated that it did not think it material for complainants to prove whether or not their use of Calvin street was necessary, it will be noted that there the court was dealing with owners of lots in the same section, and the value of the Sipe property as a corner lot would have been materially affected if the obstructions had been allowed to remain.

A similar question was before the court in *Payne* v. *Godwin, supra,* where this court said the case of *Sipe* v. *Alley* was a bill for "a mandatory injunction to compel the opening of a street that had never been accepted and upon which all the lots abutted, and it was shown that the street *was necessary to the enjoyment and value of said lots,* therefore an owner in the same block could not close the street, thus depriving another of his viested right therein. An examination of the *Sipe* v. *Alley Case* will show that it is not authority to warrant an injunction in the instant case as the alley over the lots of Godwin was not necessary to the enjoyment by the plaintiff of his lots, as it had never been used in connection therewith, and he had private rights in the streets bounding his lots on two sides and the fee in this alley between his lots."

The facts in *Fugate* v. *Carter,* 151 Va. 108, 144 S. E. 483, were that both Fugate, the complainant, and Carter, the defendant, bought lots described by reference to a recorded plat. These lots were bounded by the same alley but in different blocks. A few months prior to the institution of the suit defendant built a garage in a street designated on the plat as Fifth street, immediately in front of complainant's lot. Defendant admitted that he had no right to build the garage in Fifth street, but that the complainant's predecessor in title had erected a barn across an alley which was a continuing obstruction of the alley itself and that the parties stood *in pari delicto.* The court rejected this contention and held that the garage built in Fifth street was both a public and private nuisance; that complainant, by reason of that

twenty-foot way but inasmuch as it was not laid off on the ground, she did not know exactly where it was. She thought appellants' building was across the way, but was not certain until she caused a survey to be made of 57th street and the way after she had instituted her first suit.

In 1941, she discussed the matter with Mr. Lindsay who promised to remove the obstructions on the eastern end of 57th street. He failed to keep his promise, and in January, 1946, she instituted the suit heretofore mentioned, but before the suit was dismissed, she complained of the obstruction of the twenty-foot way, though she did not allege in her bill that it was obstructed. After she ascertained definitely the extent of the obstruction of the twenty-foot way she was informed that she would either have to amend her bill in the former suit or institute a new suit. When all of the obstructions at the end of 57th street were not removed, she instituted this suit praying that the appellants be compelled to remove the obstructions both in 57th street and the twenty-foot way.

When appellee ascertained the location of the twenty-foot way on the ground it had then been obstructed. She neither by act nor representation led appellants or their predecessors in title to believe that she had waived her right to the use of the twenty-foot way. Both appellants and appellee were charged with knowledge of the areas set apart on the plat of Ubermeer for streets and alleys.

It is essential to the application of the principles of equitable estoppel, or estoppel *in pais,* that the party claiming to have been influenced by the conduct or declarations of another to his injury, was not only ignorant of the true state of facts, but had no convenient and available means of acquiring such information, and where the facts are known to both parties, and both had the same means of ascertaining the truth, there can be no estoppel. *Chesapeake, etc., R. Co.* v. *Walker,* 100 Va. 69, 92, 93, 40 S. E. 633, 914; 19 Am. Jur., Estoppel, sec. 133, p. 788.

Appellants' final contention is that the mandatory injunction should not be awarded because the removal of the

obstructions would burden appellants with a tremendous cost with little resulting benefit to appellee.

The evidence discloses that the appellants and their predecessors in title not only had constructive notice of the fact that the plat of Ubermeer revealed that 57th street and the twenty-foot way were laid out and designated as public ways, but their own engineer, Mr. Tarrall, indicated these on the survey which he made of a part of this subdivision. Notwithstanding this fact appellants proceeded to erect buildings both in 57th street and entirely across the twenty-foot way under the mistaken belief, so far as the twenty-foot way was concerned, that they had a right to so use this property. To permit them permanently to obstruct the twenty-foot way between 57th and 58th streets would alter the whole plan of Ubermeer adopted for the benefit of purchasers of all the lots in the subdivision. Traffic on Atlantic avenue, especially during the summer months, is very heavy, and to compel the owners of the lots bounded by this twenty-foot way to use Atlantic avenue instead of the twenty-foot way between 51st and 58th street would subject them to risk and inconvenience not contemplated under the plan of Ubermeer. Such an obstruction would cause special and peculiar damage to appellee as the owner of lot 15 in Block 7 adjacent to the way.

Appellants accepted a deed which described their property by reference to a recorded plat. This plat set forth not only the lots which were conveyed to them in fee, but the areas laid out for the joint use of them and others acquiring lots by reference to the plat. The cost of removing the buildings may be as much as $50,000, as stated by some of the witnesses, and the corresponding benefit to appellee may not be anything like this amount in dollars and cents, but appellants knew, or should have known, of the easement that appellee had over this way when they began to erect their buildings across it.

A similar question was before the court in *Spilling* v. *Hutcheson*, 111 Va. 179, 68 S. E. 250, where Judge Whittle, speaking for the court, said: "The correct rule in such case

is clearly stated by Lord Cairns in *Doherty* v. *Allman*, 3 H. L. App. Cas. 720, as follows: 'If the parties, for valuable consideration, with their eyes open, contract that a particular thing shall not be done, all that a court of equity has to do is to say by way of injunction that which the parties have already said by way of covenant, that the thing shall not be done, and in such case the injunction does nothing more than give the sanction of the process of the court to that which already is the contract between the parties. It is not, then, a question of convenience or inconvenience, or of the amount of damage or injury—it is the specific performance, by the court, of that negative bargain which the parties have made, with their eyes open, between themselves.' "

Relief by way of a mandatory injunction will not be denied merely because the loss caused will be disproportionate to the benefits accruing to the opposing party where it appears that the obstruction or the violation of a right was made with full knowledge and understanding of the consequences which result. Mr. Lindsay, one of appellants, stated that he knew definitely that he was building across the twenty-foot way. It was so plain no one could have missed it. He added "I did not think I was building across a public street, but when I bought the block I thought I could build anywhere on it." The conveyance to him was not the entire area of Block 6, but lots numbered 1 to 19, inclusive, in this block. The recorded plat was notice to appellants that they in common with all other owners of lots in the subdivision, had a right to use the streets and alleys laid off thereon. Appellants' right to the twenty-foot way was subject to an easement appurtenant to the lots bounded by the way.

The decree of the trial court is

*Affirmed.*