# Richmond

## WILLIAM E. DAY, ET ALS. v. VAUGHN & USILTON, INC.

December 3, 1951.

Record No. 3821.

Present, All the Justices.

The opinion states the case.

*William E. Day,* for the appellants.

*Jesse, Phillips, Klinge & Kendrick* and *Ernest T. Gearheart, Jr.,* for the appellee.

SMITH, J., delivered the opinion of the court.

The appellee, Vaughn & Usilton, Incorporated, a Virginia corporation, hereinafter referred to as the complainant, was the owner and original subdivider of a tract of land in Arlington county known as "Vaughn & Usilton's Addition to Arlington Heights". The land was subdivided into 147 lots and certain streets, including the controversial "South Lincoln Street", as shown on a plat duly recorded with a deed of dedication on November 12, 1937. A sketch of the plat, drawn approximately to scale (although the scale has been somewhat distorted by the reduction of the drawing), is included herein as a part of this opinion. This is a composite sketch, embracing all of the successive plats which were recorded, and containing other information which will appear therefrom.

At the time this suit was instituted, "South Lincoln Street" existed only on paper. It had not been physically laid out as a public street, nor had it been accepted for public use by Arlington county or the highway department. Complainant had sold ninety of the lots and continued to own the remaining fifty-seven which comprised the entire northwest section of the subdivision including the area designated as "South Lincoln Street". Among the lots owned by the complainant, those numbered 99 through 127 and the area which constitutes "South Lincoln Street", are now zoned "C-2" for commercial use. This area is clearly shown within the double boundary lines on the accompanying sketch.

Desiring to vacate the area designated as "South Lincoln Street" as a street, in order to permit the erection of a large department store on the block shown on the sketch as "zoned C-2", complainant secured deeds of vacation from the owners of 140 of the 147 lots. In furtherance of its plan, complainant filed its bill in equity on July 19, 1948, against the remaining seven of the original 147 owners, praying, "that your complainant may be decreed to be the owner in fee simple of that area of land embraced within the bounds of what was formerly shown as 'South Lincoln Street' on the plats aforesaid, free and clear of the claims of all or any of the defendants named herein; that it may be decreed that none of the defendants named herein have any interest in said area formerly included within the said 'South Lincoln Street'; that the title of your complainant to that

area of land embraced within the former bounds of said 'South Lincoln Street' may be quieted and established as against any and all claims that have been, or may in the future be, asserted by any of the defendants named herein, their heirs, successors or assigns; and that your complainant may be granted all such other, further and general relief * * *''.

The original defendants to the bill of complaint were thus all the owners of the seven lots not included in the deeds of vacation. Two of these seven lots were owned by the Commonwealth of Virginia which filed its answer in the suit consenting to the closing of the street and the trial court entered a decree on July 7, 1950, which has now become final, adjudicating that the Commonwealth of Virginia has no interest in the area in question. Two of the remaining five lots are owned by defendants who did not file any answer or appear and as to whom the prayer of the bill has been taken for confessed, which is now final and from which no appeal has been taken. The three remaining lots are owned by the appellants, sometimes referred to herein as defendants, as follows: Mr. and Mrs. William E. Day, No. 52; Mr. and Mrs. Jalmer O. Rolfson, No. 75; and Miss Margaret R. Redmond, No. 74.

The trial court heard the case *ore tenus* and after mature consideration of the evidence and arguments of counsel, entered its order of July 7, 1950, decreeing (1) the complainant to be the owner in fee simple of that area of land embraced within the bounds of what is shown as "South Lincoln Street", and (2) that its title be quieted and established as against any and all claims that have been, or may in the future be, asserted by any of the defendants. From this decree of July 7, 1950, the defendants obtained this appeal.

The first assignment of error we shall discuss is the alleged wrongful action of the trial court in denying the motion of the defendants to dismiss the complaint for lack of jurisdiction of the subject matter. The contention is made that this was a suit to condemn private property for private purposes under the guise of a proceeding to quiet title by removing a cloud thereon.

In Virginia it is well established that equity has inherent jurisdiction to quiet title to land and remove a cloud therefrom. 8 Michie's Digest of Virginia and West Virginia Reports, Quieting Title, § 1, *et seq.*; 1 Hogg's Equity Procedure, § 125 (3rd

ed., Miller, 1943). See also section -55-153, Code of Virginia, 1950.

■ "What is a cloud? Black's Law Dictionary defines it to be an outstanding claim or incumbrance which, if valid, would affect or impair the title of the owner of a particular estate, and which apparently on its face has that effect, but which can be shown by extrinsic proof to be invalid or inapplicable to the estate in question." *Gardner* v. *Buckeye Sav., etc., Co.*, 108 W. Va. 673, 152 S. E. 530, 78 A. L. R. 1, 5. "A cloud is said to be the semblance of a title, either legal or equitable, or a claim of an interest in lands, appearing in some legal form, but which is in fact unfounded, or which it would be inequitable to enforce." *Rigdon* v. *Shirk*, 127 Ill. 411, 19 N. E. 698, Anno. 78 A. L. R. 27. See *Surry Lumber Co.* v. *Wellons*, 129 Va. 536, 106 S. E. 382; *Kane* v. *Virginia Coal, etc., Co.*, 97 Va. 329, 33 S. E. 627; *Sulphur Mines Co.* v. *Boswell*, 94 Va. 480, 27 S. E. 24.

What is the cloud sought to be removed, as disclosed by the bill of complaint? The complaint alleges that (1) complainant is the owner of all lots abutting upon the "South Lincoln Street" area, as shown on plats of record; (2) that complainant was the original subdivider of these lots; (3) that the defendants own certain lots shown on plats of record; (4) that the street has never been accepted as such by the public; (5) that the lots of defendants do not abut upon "South Lincoln Street", and that all of the defendants' lots have adequate access, over streets formally dedicated, laid out and improved, to main thoroughfares of Arlington county; (6) that the use of said "South Lincoln Street" area, as a street, would not constitute any benefit to defendants' properties; (7) that defendants claim that they have an interest in the area formerly included within "South Lincoln Street", as an incident to their ownership of lots described as owned by the defendants and shown on the plats of record.

Assuming the truth of the facts alleged, what is the legal consequence of this situation? Since the complainant must have been the owner or proprietor in order to subdivide and dedicate in the first instance, and since complainant owns all the lots abutting on the "South Lincoln Street" area, there would seem to be no doubt that the complainant has the fee simple title to the entire area designated as "South Lincoln Street". *Nusbaum* v. *Norfolk*, 151 Va. 801, 145 S. E. 257.

■ The *public* acquires no ownership in a street shown on a plat unless and until the appropriate authorities properly accept the dedication, before which time the dedicator and those claiming under him may revoke the dedication. *Fugate* v. *Carter*, 151 Va. 108, 144 S. E. 483; 5 M. J., Dedication, § 26. In the instant case it must be kept in mind that we are considering a private street and not a public street.

In *Lindsay* v. *James*, 188 Va. 646, 51 S. E. (2d) 326, 7 A. L. R. (2d) 597, we reviewed the exact nature of the valuable rights which the owners of lots in a subdivision acquire in the streets of the subdivision shown on a recorded plat and stated them, at page 656, as follows:

"The principles established by the Virginia decisions may be summarized as follows: (1) When land is subdivided into lots, streets and alleys, and lots are sold and conveyed by reference to the plat, without reservation, the conveyances carry with them the right to the use of such streets and alleys as may be *necessary to the enjoyment and value of said lots;* (2) purchasers acquiring such lots are *presumed to be interested in all streets* and alleys shown on the plat on which their lots are located; (3) but *this is a presumption of fact* and may be rebutted by showing that the easement in the way in question is not necessary to the enjoyment and value of said lots." (Italics supplied).

The doctrine established by the *Lindsay Case,* as applied to the facts of the case at bar, has been modified by the Acts of 1950, chapter 524, page 1019, codified in section 15-766.2, 1950 Cumulative Supplement, Code of Virginia, 1950, as follows: "* * * In the case of a street it shall be presumed that only property owners within the area of land shown on such plat and reasonably needing to use such street as a means of ingress and egress to and from their properties have any rights or privileges therein. * * *" The 1950 act herein referred to became effective from its passage and was approved on April 7, 1950, and, of course, was in effect on July 7, 1950, the date of the decree appealed from.

On the facts alleged in the bill, complainant owns the area within "South Lincoln Street" subject to the rights or privileges of the defendants arising out of the presumption that they are interested in all streets shown on the recorded plats, which are reasonably needed as a means of ingress and egress to and from their properties.

A distinction must be drawn between what is now a presumed interest in favor of the defendants and what is their actual interest, under the facts alleged in the complaint. It is alleged that defendants' presumed interest is not valid, because the use of the area in question, as a street, would not be necessary to the enjoyment and value of their properties. Thus, assuming the truth of this allegation, as we must for the purposes of defendants' motion to dismiss, complainants have stated a case rebutting the presumption which gave rise to defendants' claimed interest, and it required only the trial court's decree to establish that in fact the defendants had no such interest, in order that complainant's title may be free from the cloud existing thereon in the present state of the land records.

The situation in the case at bar is similar to that in the case of *Wicks* v. *Scull*, 102 Va. 290, 46 S. E. 297. There, property was conveyed to the plaintiff. A judgment had been recovered against plaintiff's grantor before the conveyance was made to the plaintiff, but the judgment had not been docketed in the city in which the land was situated, and the plaintiff having been a purchaser for value and without notice, the judgment was not a lien on the property in his hands. The court held that the judgment was a cloud on the plaintiff's title and said, in part, as follows at page 294:

"Where the incumbrance or defect in the title is real and not merely apparent, it cannot be removed, except by satisfying the incumbrance or supplying the defect, but the case before us belongs to that class where the statute gives to the judgment a *prima facie* validity. It cannot be said that the claim that the judgment in question constituted a lien upon the land was on its face absolutely without foundation, and that no extrinsic evidence was necessary to show its invalidity; or, to speak more accurately, that extrinsic evidence might not have shown its validity and binding force. On the contrary, here is a judgment which was a lien upon the land in the hands of Allan and James Scull, if they took it with notice of the existence of the judgment; that is to say, unless they were purchasers for value and without notice. Upon the proof of notice by extrinsic testimony depended the entire controversy. If the party claiming under the judgment could have proved notice upon them, the land could be subjected in their hands; and, as long as such an issue could be made, the result of which depended upon extrinsic evidence,

so long would that judgment constitute a cloud which would have been a serious injury to plaintiff's title, and greatly depreciate its value.''

█ In the light of the authorities, in the present state of the land records before us, and in the face of the actual antagonistic assertion by the defendants and corresponding denial of right by the complainant, no careful title examiner would ever pass title to this area comprising ''South Lincoln Street''. The authorities cited by the appellants attempting to show that the motion to dismiss should have been sustained have been examined. This examination shows that the cases are not in point and such as appear to be in point are easily distinguished. It is, therefore, abundantly clear that the court had jurisdiction to quiet title and remove a cloud thereon.

The lot owners next urge that this case is governed by section 5225f, 1948 Cumulative Supplement, Virginia Code of 1942, as enacted by the Acts of 1946, chapter 369, page 638, which reads, in part, as follows: ''In cases where lots have been sold, the plat or part thereof, may be vacated upon the application of *all* the owners of lots in said plat and with the approval of the governing bodies of any county or municipality * * * *and shall not be vacated otherwise''*. (Italics supplied).

█ This argument, however, overlooks the fact that by its very terms the 1946 act specifically applies only to plats recorded from and after the effective date of its operation. Since the plat under consideration was recorded in 1937, it is obvious that the 1946 act does not apply.

As stated before, ''South Lincoln Street'' was shown upon a plat recorded on November 12, 1937, among the land records of Arlington county. This plat was approved by appropriate authorities of Arlington county for recordation, pursuant to the provisions of a county ordinance entitled, ''An Ordinance to Regulate the Platting and Recording of Subdivisions of Land in Arlington County, Virginia'', a copy of which was introduced in evidence in the trial court. This ordinance was enacted pursuant to the provisions of the Acts of 1926, chapter 317, page 532, in which it is provided that plats of subdivisions may not be recorded unless they meet the requirements of the act. It is further provided by the same act that sections 5218 to 5222 inclusive, of the Code of Virginia, 1936, ''shall apply *mutatis mutandis* to the plats recorded under this Act''.

Section 5221 of the Code, thus incorporated by reference in the foregoing act, provides in part as follows: "Any part of a plat may be vacated under the provisions and subject to the conditions of this and the preceding section, *if such vacating does not abridge or destroy any of the rights or privileges of other proprietors in* said plat; * * *". (Italics supplied). In *Lindsay* v. *James, supra,* at page 655, quoting from the *Fugate Case, supra,* we said: " '* * * All that it is necessary to show is that nobody will be hurt. When these conditions obtain, the equitable doctrine of estoppel will not be extended to protect a right that does not exist in a cause already lost. * * *' ".

We are dealing here with a presumption of fact and under the facts of the case at bar it does not make any difference whether we apply the law in effect when the plat was recorded or resort to the law as amended by the 1950 act, the result is the same.

The next assignment of error is the refusal of the trial court to decree that the continued existence of "South Lincoln Street" is reasonably necessary to the beneficial enjoyment and value of defendants' land, and that the complainant is estopped from closing it. The appended sketch illustrates very clearly the relative positions of the defendants' properties and "South Lincoln Street". The Days own a home on lot No. 52 and defendants Redmond and Rolfson each own an unimproved lot, Nos. 74 and 75 respectively. The Day residence is located more than three city blocks from the nearest entrance to "South Lincoln Street" and the two unimproved lots of Redmond and Rolfson are located more than two city blocks away from the "South Lincoln Street" area. All of the defendants' lots face east on either South Ivy street or South Jackson street, both of which streets are forty feet in width and are parallel to "South Lincoln Street".

As will appear from the sketch, even if "South Lincoln Street" were graded, paved, and accepted by the county as a public street, there would be no necessity for the defendants to use it in going to and from their land. "South Lincoln Street" would, if open as a public or private street, afford them no access to any thoroughfares or points in Arlington county to which they do not now have access by way of the streets on which their lots abut. Opening "South Lincoln Street" as a street would,

therefore, afford them no more convenient access to their lots or to any other points in the county from their property.

Indeed, as the trial court (which is familiar with local conditions) pointed out in its decree, it would even be an actual inconvenience for the defendants to use "South Lincoln Street" so far as access to or egress from their own property is concerned. In other words, the closing of "South Lincoln Street" as a street does not interfere with the defendants' beneficial enjoyment of their property and the trial court properly so held.

There is another aspect of the situation of beneficial enjoyment, however, which gives us more concern. The lot owners raised the question before the trial court by requesting that the chancellor make the following findings of fact: (1) That if "South Lincoln Street" remains a dedicated street and if it is opened to traffic, then traffic on the public streets upon which defendants' lots abut would be desirably lessened; and, (2) that if a department store is erected on property owned by the complainant, a substantial increase in traffic would result on *all* nearby streets, thereby impairing the enjoyment of the home of the defendants, William E. Day and Mary R. Day, and of the lots of defendants Jalmer O. Rolfson, Josephine Rolfson, and Margaret Redmond.

In effect, defendants thus seek to show that although they may have no present *personal* use for "South Lincoln Street" for ingress or egress, they fear some future increase of traffic will result on all the streets of the subdivision, including their own, in the event that a large department store is erected as planned and that they will be injured thereby. This is really not an objection to the closing of the street, as such, but rather it is an objection to the complainant's use of its own land, other than the street, for legitimate uses. Defendants' argument here is based on the manner in which the complainant's property may be used in the future and does not touch on the problem whether "South Lincoln Street", as a street, is necessary to the enjoyment and value of defendants' property under the facts obtaining at the time of the trial. Whether or not "South Lincoln Street" is necessary to the enjoyment and value of defendants' lots is a question of fact and, as such, can only be decided in the light of the facts as they existed at the time the issue was before the trial court. If we are to speculate on what may happen at some future time, it is suggested that the complainant might,

as it has a right to do, build a large department store or other commercial establishment on the area between "South Lincoln Street" and Old Glebe Road and possibly several smaller stores or a large one in the area between "South Lincoln Street" and the eastern boundary of the area zoned as "C-2". Who can say that this situation would create more or less traffic than the large department store currently planned for the site?

The only convincing evidence on the question by any person qualified by special knowledge and experience to speak on this subject was presented by E. S. Draper, an expert city planner and landscape architect. He testified that the proposed development of the commercially-zoned area would provide adequate on-site parking space for the patrons of the department store. He further testified that, in so far as traffic on the streets shown on the plat of the subdivision is concerned, the proposed department store development and the closing of the street would not have an adverse effect on the defendants' three lots and that, as compared with the development of the area into small business establishments on each side of "South Lincoln Street", the department store project would create much less of a traffic problem, with reference to parking and traffic on nearby streets.

On the other hand, a review of the record reveals that defendants' claims, involving the alleged potential increased traffic burden on their streets, are supported by arguments and not by evidence. Further, it appears that their sole admitted purpose is merely to defeat the erection of the proposed department store. Their cause in that respect, however, was lost when they unsuccessfully resisted the rezoning of the area as "C-2" and we denied an appeal. See *Day* v. *County Board,* 186 Va. lxviii.

In this connection we must not lose sight of the fact that the decree of the trial court is entitled to the same force and effect as a jury's verdict. *Worrie* v. *Boze,* 191 Va. 916, 62 S. E. (2d) 876; *Crump* v. *Gilliam,* 190 Va. 935, 59 S. E. (2d) 72. The trial judge, having properly considered all the relevant evidence, found that "South Lincoln Street" was not necessary to the enjoyment and value of the three lots of the defendants and also found no substantial proof that defendants or their properties would suffer any injury from the closing of the street. Indeed, the defendants were frank to concede that their land had sustained no loss in value as a result of the zoning of the property for commercial purposes up to the time of the trial.

Mere speculation is not proof of abridgement or destruction of any right or privilege of the lot owners.

Finally, it is of weight that of the ninety lots sold by the complainant (many of which are closer to ''South Linclon Street'' than those of the defendants) the owners of eighty-seven lots have given their express or implied consent to the closing of the street by the complainant.

In our disposition of this case we have treated only the two pivotal issues presented, namely, jurisdiction and beneficial enjoyment. No useful purpose would be served by a discussion of the other assignments of error since those discussed cover the vital issues of the case.

For the reasons assigned, the decree of the trial court is affirmed.

*Affirmed.*

LEE BOULEVARD

TO WASHINGTON, DC →

← TO SEVEN CORNERS

LEGEND:

ZONED C-2 BUSINESS USE

ONLY OWNERS CONTESTING THIS SUIT.

DEFENDANTS NOT CONTESTING THIS PROCEEDING

OWNERS THAT TESTIFIED ON BEHALF OF DEFENDANTS OBJECTING TO CLOSING OF STREET.

EXISTING SURFACED STREETS

STREETS SHOWN ONLY ON SUBDIVISION PLAT

APPROXIMATE SCALE
1 INCH EQUALS 133 FEET

COMPLAINANT'S SKETCH A