802 F.2d 106
 PRESIDENTIAL GARDENS/DUKE STREET LIMITED PARTNERSHIP;
William Cole; Randolf Cole; Helen B. Abell and
Jeanette Wolf, Appellees,
v.
SALISBURY SLYE, LTD., Appellant,
and
L. Harvey Poe, Esq., Defendant.
 No. 85-2353.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 5, 1986.
Decided Oct. 1, 1986.
 
 James P. Schaller (David H. Cox, Jackson & Campbell, P.C., Washington, D.C., on brief) for appellant.
 John J. Sabourin, Jr. (John P. Rowley, III, Hazel, Beckhorn and Hanes, Fairfax, Va., on brief) for appellees.
 Before SPROUSE and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 ERVIN, Circuit Judge:
 
 
 1
 Salisbury Slye, Ltd. (Slye) appeals the district court's decision that Slye defaulted on agreements for the purchase of real estate from Presidential Gardens/Duke Street Limited Partnership and the individual appellees (hereinafter collectively referred to as Presidential Gardens). We conclude that the recorded deed of vacation, which purported to vacate certain lots and streets of a recorded subdivision included in the agreements, was a nullity. Thus, the deed of vacation afforded no justification for Slye's refusal to settle under the agreements. Accordingly, we affirm.
 
 I.
 
 2
 In March 1984, the parties entered into three agreements under which Presidential Gardens agreed to sell certain real estate in Alexandria, Virginia to Slye. The property consisted of land developed with Presidential Gardens Apartments and adjacent undeveloped land. The undeveloped land was subject in part to a recorded subdivision plat, the Sunnyside Subdivision.
 
 
 3
 Pertinent to this appeal, the agreements provided that Slye was required to pay an earnest money deposit of approximately $200,000 into escrow, which would be forfeited if Slye defaulted.[1] In July, the parties executed addenda to the agreements which extended the original settlement date to "on or before November 1, 1984, time being of the essence." In consideration of the extension, the escrow deposit was increased to $250,000. The addenda, as well as the original agreements, further provided that Slye was required to give to Presidential Gardens "written notice of the date, time and place of settlement, at least ten (10) days prior to the date on which settlement is to occur."
 
 
 4
 Under the agreements, Presidential Gardens was obligated to convey the land by special warranty deed. The requisite quality of title was stipulated in paragraph 5(b) as follows:
 
 
 5
 Fee simple title to the Property is to be conveyed at the time of settlement, free of liens and encumbrances; subject, however, to those matters affecting title to the Property ... which are set forth on the List of Permitted Title Exceptions ... Title is to be merchantable and insurable (subject to the Permitted Exceptions) ... by a recognized title insurance company ...
 
 
 6
 The first of November arrived and Slye had not complied with the ten-day notice of settlement provision. On November 1, Slye, however, arranged a meeting of the parties for that day. At the meeting, Slye informed Presidential Gardens that Slye desired an extension of the settlement date, and furthermore, that Slye's title insurance company, First American Title Insurance Company (First American), had discovered certain "problems" with the title. The parties could not agree on terms for extension. Presidential Gardens then tendered their special warranty deeds for the property. Slye refused the tender.
 
 
 7
 The "problems" raised by First American included a "deed of vacation" recorded in the chain of title of the property. The deed of vacation purported to vacate certain lots and streets of the Sunnyside Subdivision plat. First American listed the deed of vacation as an exception in its title insurance commitment. Maintaining that the deed of vacation was a title exception not permitted by the agreements, on November 2, Slye notified Presidential Gardens that it considered the title not marketable and insurable as required by the agreements. Accordingly, Slye sought to terminate the agreements and recoup its deposit.
 
 
 8
 On November 6, Presidential Gardens advised Slye that Presidential Gardens was entitled, pursuant to the agreements, to cure any title defects identified by Slye. Presidential Gardens further advised Slye on November 13 that it rejected Slye's assertion of a defect in the title. That same communication notified Slye that Presidential Gardens would retender the deeds to the property on November 20. In anticipation of the retender, Presidential Gardens modified the deed conveying the Sunnyside Subdivision by adding a provision that quitclaimed to Slye any interest Presidential Gardens possessed in certain streets that the deed of vacation purported to vacate. On November 20, Presidential Gardens attempted to retender the deeds to the property, but Slye refused to attend the closing.
 
 
 9
 In March 1984, Presidential Gardens entered into agreements with and sold the property to another purchaser at the same price at which Slye had agreed to purchase. Pursuant to those agreements, Presidential Gardens quitclaimed any interest in the subdivision streets and the deed of vacation was explicitly listed as a permitted title exception.
 
 
 10
 Subsequently, Presidential Gardens brought this declaratory judgment action in federal court, based on diversity jurisdiction, to establish Presidential Gardens' right to Slye's escrowed earnest money deposit. Slye counterclaimed for the deposit. Virginia law controls the action.
 
 
 11
 After a bench trial, the district court ruled, inter alia, that "[t]he unilaterally executed deed of vacation was a nullity since the City of Alexandria did not join in its execution" as required by Va.Code Ann. Sec. 15.1-482 (1981). Because the deed of vacation, therefore, did not justify Slye's refusal to settle, the district court awarded the deposit plus interest to Presidential Gardens. Slye appealed.
 
 II.
 
 12
 The essence of Slye's argument on appeal is that the deed of vacation constituted a defect in the title to the property, which rendered the title not marketable and not insurable. Because Presidential Gardens was unable to tender marketable and insurable title as required by the agreements, Slye contends that it was not obligated to settle and should recover the escrowed earnest money.
 
 
 13
 As a threshold matter, we consider the district court's ruling that the deed of vacation was a nullity.[2] Section 15.1-482 of the Virginia Code governs the vacation of a valid subdivision plat[3], or a part thereof, where as here a lot in the subdivision has been sold. That statute provides for vacation by an instrument executed by the owners of the platted lots and the municipality. See Va.Code Ann. Sec. 15.1-482(a).[4] It is undisputed that the City of Alexandria did not join in the deed of vacation here. Thus, the deed did not comply with the vacation statute.
 
 
 14
 The courts of Virginia have not addressed the status of a deed of vacation which is executed unilaterally by the lot owners in the subdivision and not by the municipality, contrary to the statute. However, the rule in other jurisdictions is that an instrument purporting to vacate dedicated land, which does not comply with the applicable vacation statute, is a nullity. See Sprague v. City of Las Vegas, 101 N.M. 185, 679 P.2d 1283, 1285 (1984) (failure to comply with statute governing vacating platted land rendered municipal "resolution" attempting to vacate "void")[5]; see also Barrett v. Ballard, 483 So.2d 304, 306-07 (Miss.1985) (reversing trial court which had dismissed petition to set aside municipal decree regarding vacation of subdivision plat where decree failed to comply with applicable statute); Boise City v. Fails, 94 Idaho 840, 499 P.2d 326, 331 (1972) (statutes relating to duly recorded plats provide the "exclusive" procedure for vacating streets dedicated pursuant to such plats;) cf. Boys Work, Incorporated v. Gale, 321 So.2d 435, 437 (Fla.Dist.Ct.App.1975) (failure to comply with statutory procedure for vacation of public road rendered county's deed to such property "void"), cert. denied, 336 So.2d 104 (Fla.1976); San Diego County v. California Water & Telephone Co., 30 Cal.2d 817, 186 P.2d 124, 128-29 (1947) (en banc) ("if the Legislature has provided a method by which a county or city may abandon or vacate roads, that method is exclusive"); McHenry v. Fouty, 223 Ind. 335, 60 N.E.2d 781, 782 (1945) ("rights of the public in and to a road can be divested only by some method authorized by law"); Town of Chouteau v. Blankenship, 194 Okl. 401, 152 P.2d 379, 383 (1944) ("Where the statutes prescribe the procedure to be followed in vacating a highway, street or alley, the statutory method is exclusive and must be substantially complied with.") In light of these cases and because the deed of vacation was not executed in compliance with Sec. 15.1-482(a), we conclude that the deed of vacation clearly was a nullity.
 
 
 15
 We turn now to Slye's contention that the title was not marketable. The Supreme Court of Virginia has defined marketable title as follows:A marketable title is one which is free from liens or encumbrances; one which discloses no serious defects and is dependent for its validity upon no doubtful questions of law or fact; one which will not expose the purchaser to the hazard of litigation or embarrass him in the peaceable enjoyment of the land; one which a reasonably well-informed and prudent person, acting upon business principles and with full knowledge of the facts and their legal significance, would be willing to accept, with the assurance that he, in turn, could sell or mortgage the property at its fair value.
 
 
 16
 Madbeth, Incorporated v. Weade, 204 Va. 199, 202, 129 S.E.2d 667, 669-70 (1963) (citations omitted).
 
 
 17
 The only defect in title raised by Slye was the deed of vacation, which was a nullity. Accordingly, this defect, if indeed it is one, was not serious. Also, this is not a case where a "statute gives to the [instrument] a prima facie validity." Day v. Vaughn & Usilton, Inc., 193 Va. 168, 174, 67 S.E.2d 898, 903 (1951). Instead, the deed of vacation is "on its face absolutely without foundation." Id. Therefore, it cannot be said that the deed was a cloud on the title, exposing Slye to the hazard of litigation. Under these circumstances, a prudent person should be willing to accept this title. Applying the standards of Madbeth, therefore, the title to the property appears marketable.
 
 
 18
 Furthermore, this case is analogous to Lyle v. Andrews, 217 Va. 192, 227 S.E.2d 686 (1976). In Lyle, the purchaser, under a contract for sale of real estate, discovered that a deed in the chain of title contained an incomplete certificate of acknowledgment. On that basis, the purchaser asserted this defect as rendering title unmarketable and refused to settle. However, there was a curative statute regarding acknowledgments so executed. The Virginia Supreme Court held that the "curative statute removed any legitimate objection to the defective certificate of acknowledgment," and therefore, that the title was marketable. Id. at 194, 227 S.Ed.2d at 688. Section 15.1-482 has a similar effect as the curative statute in Lyle. That is, the statute resolves any question about the validity of the deed of vacation. It was a nullity because it did not comply with statutory requirements. Therefore, title was not questionable. Overall, we conclude that the title was marketable.
 
 
 19
 We next address Slye's contention that the title was not insurable, as required by the agreement. First, we note that this case does not involve the situation where a title company refuses to issue a policy insuring title. See Blackmon v. Hill, 427 So.2d 228, 230 (Dist.Ct.Fla.App.1983). Indeed, First American made a commitment to insure the property. This commitment, however, listed the deed of vacation as an exception. Arguing that the deed of vacation was not a "permitted exception" under the agreements[6], Slye contends that the title was not insurable.
 
 
 20
 As already stated, the deed of vacation is a nullity. Because the insurance company in fact issued a title insurance policy commitment and because the exception complained of is a nullity, we conclude that the title was insurable.
 
 
 21
 Slye also argues that Presidential Gardens had a duty to cure the alleged defect, the deed of vacation, under paragraph 5(b) of the agreements. That provision provides that if Presidential Gardens is unable to convey title in accordance with the agreements because a "question of title" renders the title unmarketable, then Presidential Gardens has the "option" to remove the question of title. Presidential Gardens' duty, if one can exist under the agreements, never arose. The cure provision only operates if title is unmarketable. Because we have concluded that title was marketable, Slye's duty to cure argument must fail.
 
 III.
 
 22
 In conclusion, we hold that the deed of vacation was a nullity because it failed to comply with the requirements of Va.Code Ann. Sec. 15.1-482. Therefore, it did not affect the marketability or insurability of the title to the property. Furthermore, Presidential Gardens had no duty to cure this alleged defect in title because the cure provision is effective only if title is unmarketable. Accordingly, Slye had no justification for refusing to settle under the agreements. We, therefore, affirm the district court's award of Slye's earnest money deposit to Presidential Gardens for Slye's default, as provided for in the agreements.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Harvey L. Poe, the escrow agent, was named as a defendant in this action, but he was subsequently dismissed by the district court after paying the deposit into court
 
 
 [2]
 "Nullity" is defined as: "Nothing; no proceeding; an act or proceeding in a cause which the opposite party may treat as though it had not taken place, or which has absolutely no legal force or effect." Black's Law Dictionary at 963 (5th ed. 1979)
 
 
 [3]
 See generally Va.Code Ann. Sec. 15.1-465 to -485 ("Land Subdivision and Development")
 
 
 [4]
 The statute also provides for vacation by municipal ordinance. See Va.Code Ann. Sec. 15.1-482(b)
 
 
 [5]
 "Void" is defined as: "Null; ineffectual; nugatory; having no legal force or binding effect." Black's Law Dictionary at 1411
 
 
 [6]
 Exhibit B of the agreements listed permitted title exceptions as follows:
 (1) Zoning and other laws, rules and ordinances and regulations.
 (2) Easements, covenants, conditions and restrictions of record.
 (3) Existing leases, tenancies and occupancy agreements.
 (4) Matters which an accurate survey or personal inspection of the property would disclose.
 (5) Real estate taxes, assessments and other public dues and charges, which are to be adjusted pursuant to the provisions of the foregoing and annexed agreement.
 Because we conclude that the deed of vacation was a nullity, it is unnecessary to decide whether it comes within these permitted exceptions.