**Richmond.**

ONEY AND OTHERS v. WEST BUENA VISTA LAND CO.
AND OTHERS.

November 23, 1905.

1. EASEMENTS—*Sale of Lots—Recorded Plat—Bridge-Repairs.*—Where a plat of lots showing streets, alleys, etc., and a bridge over a river, connecting the lots with an adjacent city or town, has been duly recorded as provided by the "Plat Act", and lots have been sold with reference to the plat, and purchasers have relied upon the use of the bridge as one of the main inducements to purchase, and the bridge has been constructed and thrown open to the use of the public, and has been used by it, the law implies a grant of the bridge as an easement to the property conveyed. The grantor or dedicator of an easement, however, is generally under no obligation to make repairs. This duty rests on those who use the easement, and, if they fail to discharge it, they must suffer the inconvenience. This rule is changed only where there is a special agreement or prescriptive right to the contrary.

2. EASEMENTS—*Bridge—Repairs—Abandonment.*— The failure of lot owners who are entitled to the use of a bridge as an easement to their lots to keep the bridge in repair for an unreasonable length of time will amount to an abandonment of the easement, and will entitle the grantor of the easement to make such use of the materials as he sees fit. But where the bridge is still in use for some purposes, though greatly out of repair, the easement cannot be said to have been wholly abandoned, and before it is declared abandoned the users should be given a reasonable time within which to restore it to such condition as will render it safe and useful for the purpose for which it was constructed.

Appeal from a decree in chancery of the Circuit Court of Rockbridge county. Decree for defendants. Complainants appeal.

*Reversed.*

The opinion states the case.

*Hugh A. White,* for the appellants.

*E. M. Pendleton* and *D. E. Moore,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

During what is now commonly spoken of as the "boom" period, the West Buena Vista Land Company, the owner of a tract of several hundred acres of land lying just across North river, from, and west of, Buena Vista, a town then rapidly growing in population, and which afterwards became a city, desiring to enhance the value of its property and make sale of its land in town lots for building purposes, etc., laid the same off into lots, blocks, streets, alleys, parks and other public places, and on the 23rd day of September, 1890, placed a map or plat of said land, so divided, upon record in the clerk's office of the County Court of Rockbridge county, according to law. The idea of the West Buena Vista Land Co. seems to have been to make its lands across the river from Buena Vista practically a part of that town, and to that end determined to build a bridge across the river connecting the prospective town of West Buena Vista with Buena Vista, and this bridge across North River was shown on the map or plat, made and recorded as stated. The streets of West Buena Vista were to be connected continuously with the streets of Buena Vista by this bridge, and Lexington and Moore streets, appearing on the map of West Buena Vista, and which converge together at the west end of the bridge, form with the bridge a continuation of 20th street in Buena Vista at the east end of the bridge.

After recording the map showing the streets and bridge, the West Buena Vista Land Company, proceeded to make sale of its lots, villa sites, etc., and, among other sales, it sold to J. L. Oney and his associates a mill, residence and out-buildings, shown on said map, and known as "Moore's Mill," on March 20, 1891, at the price of $6,000.00, a "boom" price according to the evidence in this record, and about twice as much as the property would have brought but for the map of West Buena Vista showing the bridge across North River.

This bridge, contemplated and contracted for in 1890, was well under way in construction when Oney and his associates bought the mill property, which was connected by open and convenient streets and alleys with the bridge, and within a few yards of its west end, and was subsequently completed, extending not only across the river, but also over the railroad tracks of the Furnace Company, the Chesapeake and Ohio, and the Norfolk and Western Railway Companies, and terminated in Sycamore (20th) Street in Buena Vista, with the consent of these several companies, but the completion of the bridge was in accordance with the representations of the company in effecting sales of its lands.

By the bridge, "Moore's Mill" was brought within one-half mile of the business centre of Buena Vista, while without it the distance was about two miles around by the county road and bridge below. It is admitted that this bridge was built as a pass-way "for the owners of the West Buena Vista Co.," and, after its completion, the public was permitted to use it, and it was used for both horse and foot passengers by those desiring to use it; and for a long time, while the county bridge below was down, it was the only thoroughfare into Buena Vista from the western portion of the county; but there has never been any other acceptance of it as a highway by the county of Rockbridge or the city of Buena Vista.

After many years of service to the public, but especially to the persons who had bought land of the West Buena Vista

Company, and the owners of "Moore's Mill" in particular, the bridge became in need of repairs and unsafe, the flooring thereon having decayed, and by reason of a complaint from the railroad companies the flooring over the railroads was removed so as to avoid any danger to their traffic. This being the condition of the bridge, in order to continue it as a footway, the owners of "Moore's Mill" and others took up a subscription among the public and raised a fund with which a stairway was built from the ground up to the floor of the bridge at the point from which the flooring had been removed back to the end of the bridge over the railroad tracks, whereby the bridge was made a passage-way for pedestrians over North river, and has been used as such since. In May, 1904, while the bridge was being used in the way just stated, particularly by the residents on the West Buena Vista side of the river, the West Buena Vista Company, having disposed of all of its other property, made sale of this bridge with the view of dividing the proceeds of sale among the stockholders of the company, and the purchaser thereof began to tear it down; whereupon J. L. Oney and Ella B. Agner, who had become the sole owners of "Moore's Mill," filed their bill in this cause and obtained a temporary injunction restraining the West Buena Vista Company and all others from removing the said bridge, or interfering with its use by the public.

In their bill the complainants set out the origin of the bridge, its use, etc., as hereinbefore stated, and charge that they and others similarly situated bought their property in West Buena Vista in good faith on the existence of the bridge as a most valuable easement to their property; that the removal of it would inflict a serious and irreparable injury to the complainants by reason of the fact that they would then be without access to Buena Vista save around by the old county bridge, a distance of two miles; that the West Buena Vista Company is insolvent; and that complainants desire to repair and keep in repair the said bridge as an indispensable and valuable easement to their property, etc.

By its answer the West Buena Vista Company admits that the map or plat exhibited with the bill was made and recorded in accordance with what is known as the "Plat Act" (Acts, 1887-8, pp. 553-4) ; that the bridge was used by every one who desired to use it, and that it was offered to the county and city as a public bridge ; does not deny that complainants bought with reference to the bridge and would not have paid more than one-half as much for their property without the bridge or bought it at all. While the answer denies that the company sold with reference to the map, the deeds it made to Oney and his associates for "Moore's Mill" show that it was referred to, and the proof is uncontradicted that the bridge was urged as the inducement to the purchases of the company's property.

Upon the hearing of the cause on the bill and answer and the proofs submitted on behalf of the respective parties, the Circuit Court dissolved the temporary injunction theretofore awarded the complainants, and dismissed their bill ; whereupon they obtained this appeal.

While there was, unmistakably, an offer of appellee to dedicate the bridge in question to both the county of Rockbridge and the city of Buena Vista as a part of a public highway, it is not claimed—at least it is not shown—that it was in any manner accepted by either ; but it is equally as certain from the facts proved that it was not only the purpose of appellee to dedicate the bridge to the public use, and that the bridge was urged as an inducement to appellants and others to purchase the company's lands, and that it was one of the most important if not the principal inducement to them to buy. It is true that neither the bridge nor any part of it was conveyed in the deed to appellants or to any other purchasers of the company's lands, but the map showing the bridge was not only recorded as provided in the "Plat Act," *supra,* but was referred to in the deeds made to appellants and others ; therefore, the law implies a grant of the bridge as an easement to the property conveyed. But the rule is that the grantor or dedicator of an

easement is generally under no obligation to make repairs, and that this duty rests upon those who use the easement, and if they fail to keep it in proper condition for the uses for which it was granted or dedicated, they must suffer the resulting inconveniences. This rule is changed only where there is a special agreement or prescriptive right to the contrary. 14 Cyc. 1209; 2 Min. Insts. 19; 2 Tucker's Com. 7; 9 Am. & Eng. Ency. L. (2nd Ed.) 80.

There is nothing in this record to take the case out of the control of the general rule, so that while appellants and others similarly situated acquired by their purchase of lands from appellees a right in this bridge as an easement incident to their property, the burden rests upon them to keep it in proper condition for the uses for which it was constructed; and a failure to do this for an unreasonable length of time would amount to an abandonment of the easement, as an abandonment will be presumed where the owner of the right does, or permits to be done, any act inconsistent with the future enjoyment of the right. 10 A. & E. Ency. L., 435; *Buntin* v. *Danville,* 93 Va. 205; 24 S. E. 830; *Norfolk* v. *Nottingham,* 96 Va. 34, 30 S. E. 444; *Scott* v. *Moore,* 98 Va. 668, 37 S. E. 342, 81 Am. St. Rep. 749. Non-user of an easement, however, unaccompanied by proof of an intention to abandon it, is not sufficient; the evidence must be clear that there was the intention to abandon. See the authorities just cited.

While the evidence shows that the bridge, since the flooring was taken up over the railroad tracks, is absolutely useless except for foot passengers, it also shows that the structure, built mainly of iron and steel, is, with the exception of the flooring well preserved, and the materials therein perfectly sound. Therefore, it cannot be said that it has become entirely useless, as appellee contends, as an easement to the property of appellants. Nor can it be said, under the circumstances, that it has been abandoned by the appellants. On the contrary appellants have been all along and are now using the bridge

and insist upon their right to repair and restore it to a condition that will render it safe and useful for the purposes for which it was built and used for many years after its construction. It would, we think, be manifestly unjust to permit appellee, after having used this bridge as an inducement to appellants and others to buy its property, and permitted its use as stated, to remove it and thereby deprive these purchasers of a valuable and indispensable easement to their property.

But we are further of opinion that to entitle appellants to a continuing right or interest in this bridge as an easement they should be required to restore it, within a reasonable time, to such condition as will render it safe and useful for the purposes for which it was constructed, and that if this is not done they should be regarded as having abandoned the essement, in which event appellee will be entitled to make such disposition of the materials in the structure as it may see fit. 13 Cyc., 490; *Bolling* v. *Petersburg*, 3 Rand. 563; *Harrison* v. *Parker*, 6 East. 563.

Therefore, the decree appealed from will be reversed, the temporary injunction awarded in the cause reinstated, and the cause remanded to the Circuit Court with directions to put appellants upon the terms that unless they repair, or cause to be repaired, the said bridge, putting it in a good and safe condition for the uses for which it was constructed and formerly used, within a reasonable time to be fixed by the said court in its decree, the injunction will stand dissolved and their bill dismissed.

*Reversed.*