ESTHER M. CARROLL & others *vs.* ANNA HINCHLEY.

Worcester. May 4, 1944. — September 12, 1944.

Present: FIELD, C.J., QUA, RONAN, WILKINS, & SPALDING, JJ.

*Easement. Deed*, Construction, Plan, Easement. *Equity Pleading and Practice*, Master: exceptions to report, recommittal; Decree. *Equity Jurisdiction*, Infringement of easement.

An exception to a master's report in a suit in equity can be sustained only for error appearing on the face of the report.

The remedy of a party in a suit in equity aggrieved by a failure of a master to find further facts than those stated in his report is by a motion to recommit, not by exception to the report.

Upon facts found respecting the owner's subdivision of a tract of land on a lake into lots and streets set forth on a recorded plan showing a portion of the tract bordering the lake and furnishing access thereto marked "Park," and respecting conveyances by the owner of lots designated in the deeds by their respective numbers on the plan, a conclusion was warranted that the right to use the "Park" in common with other lot owners for access to the lake and as a neighborhood center was appurtenant to the lots so conveyed as a reasonably necessary incident to the enjoyment and use of such lots intended by the parties to the deeds.

In a suit in equity to enjoin infringement of a private easement claimed by the plaintiff in the defendant's land, a portion of the final decree enjoining the defendant from interfering with public rights in his land was beyond the scope of the bill and should be omitted from the decree:

A final decree in a suit in equity enjoining interference with the plaintiff's using a parcel of land "as provided in [a certain] deed . . . and as found by the master" was improper; the decree itself should have set forth specifically, without reference to other documents, the rights with which the defendant was enjoined from interfering.

BILL IN EQUITY, filed in the Superior Court on June 1, 1943.

The case was heard on a master's report by *Hammond*, J.

In this court the case was submitted on briefs.

*H. E. Manning,* for the defendant.

*S. H. Benoit,* for the plaintiffs.

SPALDING, J.   The plaintiffs[1] by this bill in equity seek to enjoin the defendant from obstructing their access to and use of a plot of land (hereinafter called the park) located on the shore of Lake Quinsigamond.   The case was referred to a master who after hearing the parties filed a report which was confirmed by an interlocutory decree.   The case comes here on appeals by the defendant from this and a final decree.

The master found these facts: On May 29, 1903, one Wilbur, who was in the land development business, bought a tract of unimproved land, comprising six acres on the easterly shore of Lake Quinsigamond and in the town of Shrewsbury, which he called Lake Shore Park.   A survey was made and the tract was plotted into house lots and streets which were set forth on a plan which was recorded in the registry of deeds.   The tract had a frontage of about five hundred feet on the lake to the west and an average depth of about two hundred feet; there was a frontage on the east side of about six hundred feet on a street called North Quinsigamond Avenue.   The surface of the land was hilly on three sides and sloped with a fairly steep pitch toward an inlet from the lake which was located near the center of the shore frontage; this inlet, shaped like a human thumb, was thirty feet wide and extended into the tract for a distance of eighty feet.

---

[1] After the hearing but before the entry of the final decree, Dorothy Collins and Thomas P. Collins filed a motion asking to be made plaintiffs in the case.   This motion was allowed as of June 14, 1943, the date when the hearings began before the master.

The development consisted of one hundred ten lots which were numbered on the plan. There was also shown on the plan an unnumbered plot designated "Park." This "Park" plot, which is about sixty-eight feet wide and one hundred thirty feet deep, enclosed the inlet on three sides; on it was a grove of chestnut and willow trees in which there had been placed picnic tables, swings and benches. Since only thirty-two of the lots had a water frontage, the park furnished access to and a view of the lake for some of the lots. The inlet, which was shallow, provided a safe place for small children to bathe; it was also used as a convenient mooring place for canoes and boats. In the winter it provided a place for sliding and skating.

The land was sold and purchased for summer camps and cottages by those desiring to enjoy the lake as a place of recreation. By 1917 Wilbur had sold off all the lots in the development. In each of the deeds he designated the lot by number and referred to the recorded plan mentioned above. The master found that "it was the intention of Wilbur and of all the lot purchasers, that the 'Park' tract be enjoyed by them as a means to pass to and from Lake Quinsigamond, and as a convenient gathering point or center, for usual recreation of a summer resort."

The plaintiff Carroll owns two lots on which she has erected a year-round house; the plaintiff Belanger also owns two lots, located near the park, on which there is a cottage. The defendant owns fifteen and one half lots on which there are seven houses, one of which she occupies. Two of these lots are contiguous to the park. The plaintiffs and the defendant hold titles through mesne conveyances from the grantees of Wilbur. The master found "that between 1903 and 1921, the plaintiffs and the defendant, as lot owners, had a right to the use of the 'Park' in the manner above described, and that this right springs from Wilbur's intention to give it to them, and its being a reasonably necessary incident to their enjoyment of their land, and their expectation that they purchased this right, under their deeds."

In 1921 Wilbur died and his widow, who was his residuary

devisee, on July 18 of that year executed a quitclaim deed to the town of Shrewsbury conveying the park; the deed provided that the park was "to be kept open for the use of and access to the Lake by owners of lots shown on aforesaid plan, [1] and the Inhabitants of the Town of Shrewsbury, in a reasonable manner, and subject to such park regulations as may be made from time to time." At a town meeting held on February 13, 1922, the town voted not to accept the deed. The deed, however, was recorded on April 13, 1922. "There was no evidence of the use of the 'Park' by the general public until after July 18, 1921, the date of the acknowledgment of the deed." In 1942 the town erected a sign on the park which read: "This land is open for use by the Inhabitants of the Town of Shrewsbury, who are free to use it at their own risk." By a deed dated March 29, 1943, the town conveyed to the defendant a parcel of land comprising about five sixths of the park plot. Prior to this conveyance the plaintiffs protested the proposed sale on the ground that they had rights in the park as lot owners.

In 1936 heavy rains filled in part of the inlet and the place appeared neglected and unsightly. The defendant took the matter up with the selectmen of the town and a commission of the Commonwealth designated to control the waters of Lake Quinsigamond, and was given permission to close up the inlet. This she did by building a stone wall across its mouth. This permission was obtained informally and no notice was given to the other lot owners. During the next three years the defendant completed the filling in of the inlet, planted grass, flowers and shrubs, and improved the appearance of the park. A foot path fifteen feet wide was left open along the southerly side, but since receiving the deed from the town the defendant has closed this off by a wire fence so that now all are excluded from using the park for any purpose.

The master concluded his report as follows: "From the above facts, on all the evidence, I find the plaintiff and other lot owners, including the defendant, secured an easement

---

[1] This referred to the plan (mentioned above) recorded by Wilbur in 1903.

to use the whole of the Park lot in common with one another, as a general center for activities of the neighborhood. Whether their rights have been enlarged or diminished by the conveyance by Wilbur to the Town in 1922, and the subsequent action by the Town, in my judgment, is a question of law for the court . . .."

After confirming the master's report the case was heard on the matter of the final decree. The judge ruled that there was a dedication of the park to public use in 1903 by Wilbur and that this was in addition to the various easements granted to the lot owners as found by the master. He further ruled that the dedication was fortified by the deed to the town in 1921 and by the use of the park by the public for twenty years plus the fact that the town in 1942 had erected a sign stating that the park was open for use of the inhabitants of the town. A decree was entered perpetually enjoining the defendant "from interfering with or preventing the reasonable use of the said 'Park' by the owners of the several lots and the inhabitants of the Town of Shrewsbury as provided in deed from Addie Wilbur to same and as found by the master. A reasonable use thereof does not include the right to park automobiles in said Park."

The interlocutory decree overruling the exceptions to the master's report and confirming the report was proper. Exceptions must be founded on errors shown by the report itself. *Rosenberg* v. *Garfinkel*, 294 Mass. 196, 198. *Israel* v. *Sommer*, 292 Mass. 113, 119–120. The first exception states that the master should have made further findings with respect to when the picnic tables, swings and benches were placed in the park. The defendant's remedy was by motion to recommit for further report and not by exception. *Rosenberg* v. *Garfinkel*, 294 Mass. 196, 198. Exceptions 2, 3, 4, 5 and 6 allege that various conclusions were inconsistent with other facts found. Without discussing them in detail it is enough for present purposes to say that a careful examination of the report discloses that the conclusions reached by the master were not necessarily inconsistent with his other findings. The seventh and last exception asserts that the conclusion of the master to the effect that

the plaintiffs had acquired an easement in the park in common with others as a "general center for activities of the neighborhood" is beyond the scope of the plaintiffs' bill. There is no merit in this contention. While the extent and nature of the alleged easement may not have been stated fully in the bill, enough was set forth to put this in issue.

The final decree, except in certain respects hereinafter discussed, was right. The principles of law applicable to a case of this kind are well established in this Commonwealth. A plan referred to in a deed becomes a part of the contract so far as may be necessary to aid in the identification of the lots and to determine the rights intended to be conveyed. *Boston Water Power Co.* v. *Boston*, 127 Mass. 374, 376. *Lagorio* v. *Lewenberg*, 226 Mass. 464, 466. *Bacon* v. *Onset Bay Grove Association*, 241 Mass. 417, 422. *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.* 254 Mass. 350, 354. The mere reference to a plan in the descriptive part of the deed, however, does not carry with it "by necessary implication an agreement or stipulation that the condition of the land, not adjacent to, but lying in the vicinity of, that granted, as shown on the plan, or the use to which it is represented on the plan to be appropriated, shall forever continue the same so far as it may be indirectly beneficial to the land included in the deed, and was within the power or control of the grantor at the time of the grant." *Light* v. *Goddard*, 11 Allen, 5, 8. *Coolidge* v. *Dexter*, 129 Mass. 167. *Pearson* v. *Allen*, 151 Mass. 79. *Prentiss* v. *Gloucester*, 236 Mass. 36, 52. *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.* 254 Mass. 350, 354. In other words, where land is conveyed by reference to a plan no onerous servitude (in the absence of an express grant) is created over other land of the grantor appearing on the plan where such right is not necessary for the enjoyment of the granted premises, unless shown to be intended by the parties to the deed. *Regan* v. *Boston Gas Light Co.* 137 Mass. 37, 43. *Prentiss* v. *Gloucester*, 236 Mass. 36, 52. *Bacon* v. *Onset Bay Grove Association*, 241 Mass. 417, 423. The necessity need not be an absolute or physical one. *Gorton-Pew Fisheries* v. *Tolman*, 210 Mass. 402, 410. *Well-*

*wood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.* 254 Mass. 350, 354. Each case is to be decided by a determination of the intent as evidenced by the deed and the circumstances in which it was made. *Bacon* v. *Onset Bay Grove Association*, 241 Mass. 417, 423. *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.* 254 Mass. 350, 355. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100, 104.

"In determining the question of intent, conditions existing at the time when the deed was made must be considered. The great increase in real estate development in modern times, the divisions of large tracts into small lots, and the promotion of sales by schemes which affect the use of the land by a neighborhood or community rather than by individuals as such, the necessity, which formerly was not so urgent, for open spaces and parks, the needs of a community designed largely for rest and recreation in vacations, and the fact that the general scheme of development was into lots of small size, all may be considered." *Bacon* v. *Onset Bay Grove Association*, 241 Mass. 417, 423. Applying the foregoing principles to the facts found by the master, the conclusion was warranted that the rights claimed by the plaintiffs were reasonably necessary as appurtenant to their land as it was intended and designed to be used. The case at bar is not distinguishable in its essential aspects from *Bacon* v. *Onset Bay Grove Association*, 241 Mass. 417.

The final decree recites that the defendant be enjoined from interfering not only with rights of the lot owners but also with those of the inhabitants of the town of Shrewsbury. This was apparently based on the view held by the trial judge and set forth in his "Findings, Rulings and Order for Decree" that there was a dedication of the park for public use by Wilbur in 1903. We think that on this record it is unnecessary to decide that question. It appears that all the plaintiffs have derived their title from Wilbur and they assert no rights that cannot be adequately protected by an equitable easement acquired according to the principles discussed above. No rights here are asserted on behalf of the public through its official representative as in *Attorney*

*General* v. *Onset Bay Grove Association*, 221 Mass. 342, *Attorney General* v. *Vineyard Grove Co.* 181 Mass. 507, *Attorney General* v. *Abbott*, 154 Mass. 323, *Attorney General* v. *Tarr*, 148 Mass. 309, and *Attorney General* v. *Whitney*, 137 Mass. 450. We do now undertake to decide whether parties such as the plaintiffs may enforce in a private suit rights arising out of a dedication to public use. The decree should omit the injunction in favor of the inhabitants of the town of Shrewsbury.

In another respect the decree is erroneous. It provides that the defendant be enjoined from interfering with or preventing the reasonable use of the said "Park" by the owners of the several lots and the inhabitants of the town of Shrewsbury "as provided in deed from Addie Wilbur to same and as found by the master." This is improper. A decree should contain within its four corners the mandate of the court without reference to other documents. A decree such as this, which incorporates by reference a lengthy master's report, might well give rise to doubts and ambiguities. It was said by Rugg, C.J., in *Johnson's Case*, 242 Mass. 489, at page 494, "A final order of a court settles rights of parties. It must declare by its own terms what those rights are to the end that they may be enforced. It must inform the parties as to their rights and obligations. It must contain enough to permit the court itself to adjudge whether its decision has been flouted, if there are proceedings for contempt, and to enable the sheriff to ascertain the bounds of his duty, if execution issues." The decree should omit all references to the master's report and should set forth clearly and succinctly the rights of the plaintiffs with which the defendant is enjoined from interfering.

The interlocutory decree is affirmed; the final decree is to be modified in conformity with this opinion, and as so modified is affirmed.

*So ordered.*