�export Richmond

THOMAS H. JONES

V.

GLADYS S. BEAVERS, ET AL.

August 28, 1980.

Record No. 781086.

Present: All the Justices.

*M. T. Bohannon, Jr. (Herbert & Bohannon, P.C.,* on brief), for appellant.

*Roger G. Hopper* for appellees.

CARRICO, J., delivered the opinion of the Court.

This appeal is from a decree declaring the rights of the parties in a 30-foot road and a landing shown on the plat of a waterfront subdivision. The plaintiffs, Gladys S. Beavers and others,[1] are the owners of lots or parcels derived from a portion of a 110-acre tract formerly belonging to a common grantor of all the parties to this proceeding. The defendant, Thomas H. Jones, is the owner of the residue of the 110-acre tract; the subdivision plat locates the subject road and landing on this residue.

In the court below, the plaintiffs filed a motion for declaratory judgment against the defendant. In their motion, the plaintiffs sought a determination that they were entitled to an easement in, and the use of, the 30-foot road and the landing. The plaintiffs also prayed for an injunction restraining the defendant from interfering with the exercise of their rights in the property in question.

Responding, the defendant denied that the plaintiffs had any interest in the road or the landing. By way of cross-bill, the defendant sought an injunction prohibiting the plaintiffs from interfering with his use of the disputed property.

In its final decree, the trial court held that the plaintiffs were "entitled as a matter of law, in conjunction with the defendant, to the use of and an appurtenant easement in and across the 30 foot road . . . and also in the landing." From this decree, the defendant has appealed.

---

[1] In addition to Gladys S. Beavers, the plaintiffs are Andrew H. Beavers, W. Sherwood Beavers, Alexander Carter, Elva W. Carter, Russell E. Carter, Sr., Lena M. Carter, Charles L. Tomlin, Dorothy H. Tomlin, Douglas M. Pierce, and Vivian W. Pierce.

The final decree shows that the trial court disposed of the case solely upon "the pleadings and the exhibits introduced herein." Apparently, the parties submitted the matter without introducing evidence other than the exhibits. Consequently, the record on appeal consists entirely of the pleadings and the exhibits.

From this skeletonized record, it appears that, in 1965, Elise S. Bennett was the owner of the 110-acre tract from which the properties of the plaintiffs and the defendant are derived. The tract bordered Whitings Creek (or Whitens Creek) on the north and State Route 33 on the south.

By separate deeds dated June 11, 1965, Mrs. Bennett conveyed to Frank B. and Lucy G. Sadler[2] Lot A and to the plaintiffs Gladys S. and W. Sherwood Beavers (mother and son) Lot 6,[3] both as shown "on the plat of survey hereinafter referred to." Later recitals in the deeds state that, for a metes and bounds description of the property conveyed, "reference is made to the plat of survey made by W. H. Stiff, C.L.S., dated March 8, 1965."

A copy of the Stiff plat is attached to the Sadler deed, and the copy is reproduced at the end of this opinion. The surveyor's certificate states that the plat "represents 7 Lots of the Queens Point Subdivision . . . and are . . . the 7 numbered Lots and 7 Lots not numbered and are being developed." The plat depicts the relative locations of Queen's Point Drive, the 30-foot road, the landing, the 7 numbered lots, Lot A, the 7 unnumbered lots, and a portion of the remaining land of Mrs. Bennett.

The Sadler and Beavers deeds both include an "easement of right of way" over Queen's Point Drive to Route 33. Both deeds contain also certain covenants, restrictions, and conditions "binding on all lots in . . . Queen's Point Subdivision." One of these provisions states that Mrs. Bennett "will not be responsible or liable for any accidents or damages to persons or property on any lot, pier or piers or roads leading thereto."

By deed dated April 15, 1966, Mrs. Bennett conveyed to the County of Middlesex a strip of land, the strip "being forty (40') feet in width and extending northwardly [from Route 33] approximately five-tenths (.5) of a mile to the road leading to the landing on

---

[2] The Sadlers are not parties to this proceeding.

[3] Lot 6 later became titled in the names of the plaintiffs Gladys, Sherwood, and Andrew Beavers.

Whiting Creek." A plat attached to the deed shows a road marked "To Landing," leading northeastwardly from the strip.[4]

By deed dated January 13, 1967, Mrs. Bennett conveyed to L. L. Martin 102.65 acres, constituting the residue of her original 110-acre tract. The deed refers to the Stiff plat to exclude from the conveyance the land previously transferred to the Sadlers and the Beavers.

During his ownership, by reference to the Stiff plat, Martin conveyed Lot 7 to the plaintiffs Gladys S. and W. Sherwood Beavers, Lot 8 to the plaintiffs Alexander and Elva W. Carter, and Lots 10, 11, and 12 to the plaintiffs Charles L. and Dorothy H. Tomlin. The Tomlin deed designates the 30-foot road as the eastern and southern boundaries of the property conveyed by the deed.

In addition, Martin conveyed to the plaintiffs Douglas M. and Vivian W. Pierce a 3-acre parcel fronting 450 feet on the westerly side of Queen's Point Drive, adjacent to the southerly line of Lot A, and consisting of a portion of the unnumbered lots shown on the Stiff plat. The Pierce deed, however, makes no reference to the Stiff plat.

Also included in the record is a deed conveying Lot 9, by reference to the Stiff plat, from Mellville T. Chick and wife to the plaintiffs Russell E. Carter, Sr., and Lena M. Carter. The deed recites that Lot 9 was acquired by the Chicks from L. L. Martin. The deed states further that Lot 9 is bounded on the east by "a cove of Whitings Creek and a landing."[5]

In February, 1973, Martin conveyed to Queen's Point Limited Partnership 91 acres, constituting the land then remaining of the original 110-acre Bennett tract. Then, in May, 1974, the partnership conveyed the same land to the defendant, Thomas H. Jones. Neither the deed nor an attached plat refers to the 30-foot road or the landing. Following his purchase, the defendant "blocked [the plaintiffs'] use of the landing." The present litigation resulted.

At the outset of our discussion of the issues, we note that the plaintiffs make no claim that the 30-foot road and the landing have been dedicated to public use or that, as members of the public, the plaintiffs have any rights in the road and the landing. We note

---

[4] The plat shows that the northernmost portion of the strip conveyed to the County of Middlesex extends only to the southerly point of terminus of the road marked "To Landing." Thus, the strip does not actually connect with the landing road so as to provide access from one to the other.

[5] Examination of the Stiff plat will show that Lot 9 is not bounded on the east by the landing in dispute in this case, but is bordered by the westerly line of the 30-foot road.

further that, on brief and at the bar of this court, the defendant's counsel conceded that the plaintiffs, with the exception of the Pierces, are entitled to the use of the 30-foot road. In his turn during oral argument, counsel for the plaintiffs conceded that, because the deed to the Pierces did not refer to the Stiff plat, the Pierces are "excluded" from use of the 30-foot road and the landing. Accordingly, we dispose of all issues concerning the 30-foot road by declaring that the plaintiffs, with the exception of the Pierces, have an easement in and the right to use the road as shown on the Stiff plat. And, with respect to the Pierces' alleged right to use the landing, we declare that they are without such right.

This leaves for decision the question whether the plaintiffs, with the exception of the Pierces, are entitled, as a matter of law and of private right, to an easement in, and the use of, the landing. Stated differently, the issue is whether, standing alone, a conveyance of land by reference to a recorded plat showing a waterfront area marked "landing" on the remaining land of the grantor bestows upon the grantee an easement in and the right to use the landing.

This precise question is a novel one for this court. Indeed, we have been unable to discover any authority directly in point.[6]

As the plaintiffs emphasize, however, this court has considered the question of an implied easement in a bridge shown on a plat of subdivision. In *Oney* v. *West Buena Vista L. Co.,* 104 Va. 580, 52 S.E. 343 (1905), the appellee, a land company, subdivided a large tract into blocks, lots, streets, and alleys and recorded a plat thereof in the clerk's office. The plat showed a bridge over the North River, connecting streets of the subdivision with streets of the Town of Buena. Vista across the stream. Oney purchased mill property shown on the plat, paying therefor approximately double

---

[6] The plaintiffs cite *Carroll* v. *Hinchley,* 316 Mass. 724, 56 N.E.2d 608 (1944), as holding that the designation of an area on a recorded plat as "a mooring place for canoes" creates, in favor of grantees purchasing with reference to the plat, an easement in the area. However, the area involved in *Carroll* actually was designated on the plat as a "Park," and the mooring of canoes was only one of the uses to which the area was put. In any event, the case was decided, not as a matter of law, but upon proof of the "conditions existing at the time when the [conveyances were] made." 316 Mass. at 730, 56 N.E.2d at 612.

The defendant cites text authority and several cases named therein for the propositions that a landing differs from streets, alleys, and parks and that, in the absence of a word such as "public" modifying the word "landing," a public or community use will not be implied. However, the texts and the cases deal with public dedication of landings or wharves and thus are inapposite here.

the amount the property would have brought without the designation on the plat of the bridge spanning the river.

The bridge was under construction when Oney made his purchase, and it was completed later. It was used not only by Oney and other owners of property in the subdivision but also by the public for "horse and foot passengers." After many years of service, the bridge fell into disrepair, and Oney and others subscribed to a fund to continue the span as a footway. While so in use, the bridge was sold by the land company. The purchasers started to demolish the structure; whereupon, Oney sought by bill in equity to enjoin the removal.

Reversing a decree dismissing Oney's bill, this court held that, under the circumstances, "the law [would imply] a grant of the bridge as an easement to the property conveyed." 104 Va. at 584, 52 S.E. at 344. The court stated further that it would be "manifestly unjust to permit [the land company], after having used this bridge as an inducement to [Oney] and others to buy its property, and permitted its use as stated, to remove it and thereby deprive these purchasers of a valuable and indispensable easement to their property." 104 Va. at 586, 52 S.E. at 345.

The present plaintiffs say that there is "no significant difference" between their case and *Oney*. We disagree; from a procedural standpoint, the two cases are strikingly dissimilar. These plaintiffs ask us to decide, as a matter of law, that they have an easement in and a right to use the landing in question solely because the conveyances to them refer to a plat showing the landing. *Oney* was decided on a fully developed record; beyond what was shown on the plat, there were pertinent "proofs submitted," and the decision was made "from the facts proved." 104 Va. at 584, 52 S.E. at 344.

*Oney* and this case, however, are similar in one important respect: both are governed by the same principles of law. The "proofs submitted" by the *Oney* plaintiffs included a showing of inducement, reliance, user, and injury. Although the court did not label the ground upon which it implied an easement from this showing, it is clear that estoppel was the true basis for the action. *See Walters* v. *Smith*, 186 Va. 159, 172, 41 S.E.2d 617, 623 (1947). As will be observed presently, the instant case also is governed by the principles of estoppel.

· In addition, the plaintiffs rely upon our decision in *Lindsay* v. *James*, 188 Va. 646, 51 S.E.2d 326 (1949), which involved a platted subdivision at Virginia Beach containing blocks, lots, streets, alleys, and ways. We affirmed a decree entered in favor of an owner of lots

adjacent to a 20-foot way shown on the plat, the decree ordering the removal of an obstruction of the way by an owner of lots in the next block. After discussing a number of Virginia cases, we said:

> "The principles established by the Virginia decisions may be summarized as follows: (1) When land is subdivided into lots, streets and alleys, and lots are sold and conveyed by reference to the plat, without reservation, the conveyances carry with them the right to the use of such streets and alleys as may be necessary to the enjoyment and value of said lots; (2) purchasers acquiring such lots are presumed to be interested in all streets and alleys shown on the plat on which their lots are located; (3) but this is a presumption of fact and may be rebutted by a showing that the easement in the way in question is not necessary to the enjoyment and value of said lots."

188 Va. at 656, 51 S.E.2d at 331.

The plaintiffs embrace the second principle quoted above, relating to presumptions concerning streets and alleys, and add to it the rule they say is followed in some states to the effect that a conveyance of land by reference to a plat designating a park or other open area creates an easement for the benefit of the grantee in the area designated. Next, the plaintiffs equate landings with parks, parks with streets and alleys, and, ultimately, landings with streets and alleys. Then, the plaintiffs set up in their favor a presumption that they are interested in the landing in question, assert that the presumption has not been rebutted by evidence, and conclude that they have an easement in and are entitled to use the landing as necessary to the enjoyment and value of their lots.

The difficulty with the plaintiffs' rationalization is that, en route to setting up a presumption in their favor and arriving at the conclusion they are entitled to an easement, they have taken the various necessary steps *as a matter of law*. While there may be situations where it would be proper to take the steps in such a manner, we are satisfied that this is not one of those situations.

We believe that, factually and legally, there are substantial distinctions between landings, on the one hand, and, on the other, streets and alleys. The word "landing" is ambivalent, connoting a character and signifying a use sometimes private, sometimes public; streets and alleys by their very names bespeak a nature and indicate a use essentially public. The existence of an easement in a street

or alley as the means of access to a given property usually is indispensable to the enjoyment and value of the property; it is only natural, therefore, to apply a presumption of interest, albeit rebuttable, with respect to the use of streets and alleys by grantees of a subdivider. Whether, however, an easement in a landing is necessary to the enjoyment and value of property generally will depend upon the circumstances of the particular case.

Accordingly, we are of opinion that the plaintiffs were not entitled to any presumptions, but that the burden was upon them to establish their entitlement to an easement in the landing by evidence setting up an estoppel against the defendant. After combing the sparse record of this case in search of such evidence, we come to the inevitable conclusion that the plaintiffs failed to carry their burden; there is no evidence in the record to establish inducement, reliance, user, or injury.

For the reasons assigned, to the extent that the decree appealed from granted the Pierces the right to use the 30-foot road, the decree will be reversed and set aside and final decree will be entered here in favor of the defendant declaring that the Pierces have no rights in the road; with respect to the rights of the remaining plaintiffs to use the road, the decree will be affirmed. To the extent that the decree granted all the plaintiffs rights in the landing, the decree will be reversed and set aside and final decree will be entered here in favor of the defendant declaring that the plaintiffs have no rights in the landing. Neither side has asked for relief here by way of injunction; consequently, our disposition of the case will be without prejudice to the rights of the parties, except the Pierces, to apply to the trial court for such injunctive relief as may be necessary later to protect the interests herein declared.

*Affirmed in part,*
*reversed in part,*
*and final decree.*