STONEY CREEK RESORT, INC.

v.

M.D. NEWMAN AND PHYLLIS P. NEWMAN

Record No. 900115

November 9, 1990

Present: All the Justices

*Roger B. Willetts* (*Edmunds, Willetts, Young & Hicks*, on brief), for appellant.

*Katherine Carruth Link* (*Victor M. Santos; Nelson, McPherson, Summers & Santos*, on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

The primary issue that we consider in this appeal is whether a lot owner in a subdivision acquired an easement for the use of a lake and recreational facilities.

M.D. Newman, Phyllis P. Newman, and other lot owners in Senger's Mountain Lake Subdivision filed a suit to establish an easement to use a lake and recreational facilities owned by Stoney Creek Resort, Inc. and to enjoin Stoney Creek from prohibiting their use of the lake and facilities.[1] The chancellor viewed the property, considered evidence, memoranda, and argument of counsel, and concluded that Stoney Creek's predecessor in title had conveyed an easement to use the lake and recreational facilities with the lot acquired by the Newmans.

H.A. Senger and his wife, Mary Senger, acquired several hundred acres of property in the southern portion of Augusta County near the village of Greenville. In 1959, a flood-control dam was built upon a part of their land, thereby creating a lake. Shortly thereafter, the Sengers began to develop the property near the lake. They constructed recreational and camping facilities and subdivided the land into residential lots.

---

[1] All of the plaintiffs, with the exception of the Newmans, later took a voluntary nonsuit.

The Sengers used a sales contract and a deed as a part of their marketing efforts to sell the residential lots. The contract, which contained "restrictions and conditions," allowed each purchaser to use the lake and other lands the Sengers owned, provided that the purchaser was a member in good standing of the Senger's Mountain Lake Outdoor Club. Lot owners could become members of the club by paying an annual fee determined by "costs, improvements and facilities made available to the membership."

The Sengers executed a sales contract and conveyed the first lot in the subdivision to Tracy H. Hazlett and Rachel Young Hazlett, by deed dated July 15, 1960. The deed included a provision that the conveyance was subject to certain restrictions, regulations, and conditions set forth on the reverse side of the sales contract, a copy of which was attached to and made a part of the deed and recorded with the deed. The relevant provisions in the deed are:

> The following restrictions, regulations and conditions as set forth on the reverse side of the sales contracts by which the lots in Senger's Mountain Lake Resort, Units 1 and 2, in Riverheads District of Augusta County, Virginia, are to be sold shall run with the land and bind the Grantees of such lots, their successors and assigns, and are in addition to the restrictions, limitations and conditions specifically set forth in the deeds by which H.A. Senger and wife shall convey the said lots: . . .
>
> 2. Recreational facilities will be provided for hunting, fishing, swimming, boating, ice skating, picnicing [sic], children's playground, hiking, archery, nature study, etc., for the use of club members and their guests in good standing. (See Senger's Mountain Lake Outdoor Club; rules and regulations).

In 1972, the Newmans executed a sales contract with the Sengers for the purchase of a lot in the Senger's Mountain Lake Subdivision. The Newmans acquired their lot by deed dated May 2, 1983. The deed stated that the conveyance was subject to the restrictions set forth in the sales contract, as recorded with the 1960 Hazlett deed.

In 1979, the Sengers conveyed the lake property to J.D. and Elizabeth B. Willingham and informed the Willinghams that lot owners had the right to use the lake and recreational facilities.

Subsequently, Robert L. and Carol L. Norman acquired the property from the Willinghams. Neither the Willinghams nor the Normans challenged the lot owners' right to use the lake and facilities. In 1984, after Stoney Creek acquired the lake, it refused to allow the Newmans the use of the lake or recreational facilities unless they became members of the Stoney Creek Resort Club for an annual fee of $4,000.

The chancellor concluded that the lake was the focal point of the development, that the lake was advertised and was an inducement for the purchase of lots, that there are no recreational facilities in this area of Augusta County except the lake, and that the language in the deeds and the evidence established that the Newmans have an easement to use the lake and the recreational facilities. The chancellor also held that Stoney Creek's annual fee of $4,000 per lot for the use of the lake was inequitable and unconscionable.[2]

Stoney Creek argues that the Newmans did not have an easement to use the lake and recreational facilities but, rather, that the deed and contract created personal obligations upon the Sengers to provide recreational facilities to the Newmans.[3] We disagree.

■ We have repeatedly articulated principles governing the establishment of an easement.

An easement . . . is a privilege to use the land of another in a particular manner and for a particular purpose. It creates a burden on the servient tract and requires that the owner of that land refrain from interfering with the privilege conferred for the benefit of the dominant tract . . . Establishment and protection of an easement by injunction are eq-

---

[2] Stoney Creek argues in its brief that the trial court erred in holding that the fee it proposed was unconscionable. Stoney Creek failed to include this assignment of error in its petition for appeal as required by Rule 5:17(c). Accordingly, this assignment of error was not properly preserved and cannot be considered on appeal.

[3] Stoney Creek, relying upon *Town of Vinton* v. *City of Roanoke*, 195 Va. 881, 80 S.E.2d 608 (1954), argues that the rules, regulations, and restrictions relating to the use of the lake and recreational facilities created a personal obligation on the part of the Sengers, not an easement running with the land. *Vinton* is not applicable. In *Vinton*, we interpreted the provisions of a legal instrument which constituted a deed with respect to the sale of a water distribution system, and, at best, a "purported requirements" contract regarding the sale of water. We held that an easement did not exist because there was no servient tenement upon which to impose a duty to furnish water. *Id.* at 892, 80 S.E.2d at 615.

uitable remedies . . . The proof necessary to justify equitable relief includes evidence of the facts that give rise to the easement, whether by express grant or reservation, by implication or by other means.

*Brown* v. *Haley*, 233 Va. 210, 216-17, 355 S.E.2d 563, 567-68 (1987) (citations omitted).

We discussed the creation of an implied easement in *Oney* v. *West Buena Vista L. Co.*, 104 Va. 580, 52 S.E. 343 (1905). In *Oney*, a land company acquired a large tract of land and subdivided it into blocks, lots, streets, and alleys and recorded a plat in the clerk's office. The plat included a bridge over a river which connected streets of the subdivision with streets of the town of Buena Vista which was located across the river.

Oney purchased mill property shown on the plat and paid approximately twice the amount of the value of the property because the plat showed a bridge which crossed the river. The bridge, under construction at the time Oney made his purchase, was completed later. The bridge was used by Oney, owners of property in the subdivision, and by the public for "horse and foot passengers." After years of service, the bridge fell into disrepair. Oney and others subscribed to a fund to finance some costs of repairs to the bridge and it continued to be used as a footway. The land company sold the bridge and the purchaser began to demolish it. Oney sought to enjoin the removal of the bridge. We stated:

> [T]he bridge was urged as an inducement to appellants [lot owners] and others to purchase the company's lands, and . . . it was one of the most important if not the principal inducement to them to buy. It is true that neither the bridge nor any part of it was conveyed in the deed to appellants or to any other purchasers of the company's lands, but the map showing the bridge was not only recorded as provided in the 'Plat Act' . . . but was referred to in the deeds made to appellants and others; therefore, the law implies a grant of the bridge as an easement to the property conveyed.

*Id.* at 584, 52 S.E. at 344.

We further discussed the establishment of an implied easement in *Brown* v. *Haley*. Rufus and Sallie Brown conveyed to Appalachian Power Company the right to fill with water that portion of a tract of 321.75 acres to the 800-foot elevation and to enter be-

low the 800-foot contour and clear the land for the creation of a lake. The deed reserved to the Browns the right to use the land below the 800-foot contour.

The Browns conveyed to Dayton A. and Lucy S. Haley a portion of the remaining land with an easement of right-of-way over other lands of the Browns for ingress and egress. The tract extended to the 800-foot elevation contour of the land owned by Appalachian Power. 233 Va. at 213, 355 S.E.2d at 566. The Haleys constructed a beach, piers, a campsite, and a trailer park for recreational use of the lake. After being filled, the lake rose to a water level at approximately the 795-foot elevation contour. Consequently, the Haleys' tract was separated from the lake by a strip of land. *Id.* The Haleys filed a motion for declaratory judgment and a bill of complaint asking the court to declare that they had an easement to cross the Browns' land below the 800-foot contour to reach the lake and to enjoin Brown from taking any action which might impede their access to the lake. *Id.* at 214, 355 S.E.2d at 566.

 We discussed, in *Brown*, the elements necessary to establish an implied easement. "When a landowner conveys a portion of his land, he impliedly conveys an easement for any use that is continuous, apparent, reasonably necessary for the enjoyment of the property conveyed, and in existence at the time of the conveyance." *Id.* at 219, 355 S.E.2d at 569.

 Application of the principles we articulated in *Oney* and *Brown* support the chancellor's decision that the Newmans had acquired an implied easement to use the lake and recreational facilities. The chancellor found that the lake was the focal point of the development. Mr. Senger, the developer, testified that the lake was advertised and was an inducement to the purchase of the lot. The Newmans testified that they purchased the lot because of the existence of the lake. The deeds expressly provide that the "restrictions shall run with the land and bind the grantees, their successors and assigns." The chancellor found that the Sengers intended that lot owners would have permanent access to the lake if they paid their fair share for maintenance of the lake. The restrictions, regulations, and conditions contained in the deeds burden the lake property and benefit the Newmans' lot.

 The evidence was sufficient to support the chancellor's findings that the use of the lake was continuous, apparent, reasonably necessary for the enjoyment of the property conveyed, and in

existence at the time of the conveyance. Additionally, a legal principle that we stated in *Brown* is equally pertinent here:

> Where the parties to a land transaction contemplate that the purchasers will have access to the water for recreational purposes and where such access adds materially to the value of the property conveyed, use of the property retained for access to the water is reasonably necessary for the beneficial use and enjoyment of the property conveyed.

*Id.* at 220, 355 S.E.2d at 570 (citations omitted). Therefore, we hold that the Newmans acquired an implied easement for the use of the lake and recreational facilities, upon payment of an annual fee based upon the "costs, improvements and facilities made available" to members of the Club.

Stoney Creek also argues that the trial court erred in holding that the language contained in the Newmans' deed, the contract which preceded the deed, and the rules and regulations of Senger's Mountain Lake Outdoor Club, Inc. by reference in the deeds was vague, thereby requiring parol evidence to determine its meaning.[4] We find no error in the decision of the trial court. The existence of an implied easement depends upon the factual circumstances unique to each case. *Id.*; *Jones* v. *Beavers*, 221 Va. 214, 221, 269 S.E.2d 775, 779 (1980).

Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*

---

[4] Stoney Creek also argues that the trial court erred in holding that it was estopped to deny an easement for use of the lake by the Newmans. We need not consider this assignment of error in view of our decision that an implied easement exists.