Billings, A.J.
I. Procedural History
The plaintiff, a physician, has office space in the first floor of a building owned by the defendant. The plaintiff commenced this action by Verified Complaint filed July 31, 2002. The complaint alleged various breaches by the defendant landlord of the lease. These included the use, by the landlord and his agents, of the rear parking lot, which under the lease is devoted to the exclusive use of the plaintiff s medical practice. Patients and staff of the medical practice, he alleged, were inconvenienced thereby.
The complaint sought a preliminary, then a permanent, injunction addressed to the parking issue. On August 5, 2002, the Court (Donahue, J.) issued the requested preliminary injunction,
prohibiting the Defendant, his agents, servants and employees from using the parking area behind the building in which the Leased Premises are located.
The defendant, by motion filed September 23,2002, sought modification of the injunction, pointing out that the dumpster serving the building was, and had been since before the lease, located in the rear parking lot, and that in order for it to be emptied (i.e., for the building’s trash to be removed), access was needed. The plaintiff opposed the modification. On October 24, 2002 the Court (Toomey, J.) issued the following:
After hearing insofar as the instant motion seeks to dissolve the existing injunction, the motion is DENIED. The motion’s request to modify the said injunction is however, ALLOWED to the ends 1) That defendant is enjoined from any conduct (action or inaction) inconsistent with the provisions of the controlling lease, 2) that defendant shall be entitled to enter the parking lot for the purpose of snow and ice removal as contemplated by the lease and 3) that defendant shall be entitled, again in accordance with the lease to enter the parking lot to empty and clean the dumpster, but said entry shall be completed by no later than 8:00 A.M. on the days upon which said emptying and cleaning is to be accomplished.
On November 1, 2002 the plaintiff filed an “Emergency Motion to Remove Dumpster,” alleging that the same had not been emptied since the modified injunction issued. The Court (Fecteau, J.) denied the motion after hearing on November 15, 2002.
On March 12, 2004 the plaintiff filed a Verified Complaint for Contempt, along with an emergency motion to permit him to withhold rent. A summons issued on March 18. The defendant moved to dismiss, on grounds more fully explored below. An evidentiary hearing was held on April 6 and 30, 2004. The Court was subsequently notified that the parties had agreed to a limited withholding and offset of rent on the claim pertaining to the “Car Damage Claim” (see below). I now issue these Findings, Conclusions and Order on the remaining claims asserted by the Complaint for Contempt.
II. Findings of Fact
As noted above, the plaintiff and defendant are tenant and landlord, respectively, in a building located at 141 Highland Street, Worcester. The plaintiff, a physician, leases about 1800 square feet on the first and second floors; with this comes a storage area in the basement “and the exclusive use of the parking lot in the rear of the building.” The latter consists of six or eight parking spaces, used by the plaintiff and by staff and patients of the medical practice which the plaintiff operates in the leased space.
The plaintiff formerly leased the space from a realty trust controlled by his father. The defendant acquired the building in March 2002, subject to the plaintiffs five-year lease dated October 2, 2000. A number of irritants have arisen in the parties’ landlord-tenant relationship. Those presented in the Verified Complaint for Contempt, and in the evidence before me, are as follows.
A. Dumpster Claim
Prior to the building’s sale, the dumpster was emptied twice weekly, generally before 8:00 a.m. Since the sale, the trash hauler has frequently arrived after 8:00 (sometimes requesting that cars next to the dumpster be moved), and has been turned away by the plaintiff so as not to disrupt the practice. For this reason, and because other tenants in the building (mostly college students) discard items such as mattresses that will not fit in the dumpster, there is frequently trash and debris piled next to it in the parking lot. Photos *13 introduced in evidence confirm that the situation is unsightly and possibly unsanitary.
B.Parking Lot Use Claim
The plaintiff testified credibly, and I find, that the defendant’s agents — particularly, a property manager named “Nick” — routinely park in the rear parking lot when visiting the building to fix the furnace or address the needs of other tenants. This has occurred, according to the plaintiff, “more times than I can count.” Sometimes the plaintiff has objected; other times, because he has “become so tired of the fights,” he has not.
C.Auto Damage Claim
On Monday, January 5 or 12, 2004, the plaintiff arrived at the office to find a good-sized hole in the. front (street-side) exterior wall of the building, all the way into the room in the front of the first floor, which the plaintiff used for computers and files. This room was about 40 to 50 square feet. The hole was evidently the result of an automobile having struck the building over the weekend.
The plaintiff called Nick, the property manager, right away. It took five to seven days for anything to be done, during which time the office was very cold (this being a week of single-digit temperatures outside), and not secure. When a crew finally did come, it was to effect a “quick fix” using plywood and insulation. The room was still cold enough to be uninhabitable. The fact that the office thermostat was in this room made regulating the temperature of the rest of the office difficult.
D.Dog Waste Claim
The Verified Complaint for Contempt alleges that an upstairs tenant has a dog, whom the tenant permits to defecate “in the area of the leased premises” and adjacent grass and garden areas, and that the resultant accumulations are in violation of a City ordinance. No evidence was presented on this issue at the trial.[1]
E.Leaking Ceiling Claim
The complaint also alleges that water enters the plaintiffs space from the floor above, causing damage to ceiling panels, computers, telephones, carpets, and documents. As with the dog waste claim, no evidence was presented at the hearing concerning this claim.
III. Discussion
Much of the Complaint for Contempt founders on “the unchallenged premise that ‘[t]o constitute civil contempt there must be a clear and undoubted disobedience of a clear and unequivocal command.’ ” Sax v. Sax, 53 Mass.App.Ct. 765, 771 (2002), quoting United Factory Outlet, Inc. v. Jay’s Stores, Inc. 361 Mass. 35, 36 (1972).
Thus, the Dog Waste Claim and the Leaking Ceiling Claim, for example, have nothing to do with the explicit commands of the Preliminary Injunction, either as originally issued or as modified. The plaintiffs attempt to bring these claims within the broad umbrella of the prohibition, in the modified injunction, against “any conduct (action or inaction) inconsistent with the provisions of the controlling lease” sweeps too broad.
When presented with a complaint for contempt, the court must first consider whether the order at issue provided the alleged contemnor with a “clear and unequivocal command” to refrain from the allegedly contumacious conduct. Only a clear and unequivocal order provides “all who are subject to [the] order’s command [with] fair notice of the conduct the order prohibits.” The requisite unequivocal clarity requires more than a general statement that might or might not include the accused’s conduct.
O’Connell v. Greenwood, 59 Mass.App.Ct. 147, 149-50 (2003) (citations omitted). See, e.g., Warren Gardens Hous. Coop. v. Clark, 420 Mass. 699, 701 (1995) (order to “adequately supervise” children provided insufficient notice that particular omissions constituted inadequate supervision).
The injunction’s incorporation by reference of an eight-page commercial lease, some of whose provisions lacked the crisp definitiveness required by the cases for the injunction itself,[2] did not fairly alert the defendant that any breach — even one unrelated to the allegations in the complaint or to the evidence on which the injunction issued — might subj ect him to the heavy artillery of contempt sanctions.
A decree should contain within its four corners the mandate of the court without reference to other documents. “A final order of a court settles rights of parties. It must declare by its own terms what those rights are, to the end that they may be enforced. It must inform the parties as to their rights and obligations. It must contain enough to permit the court itself to adjudge whether its decision has been flouted, if there are proceedings for contempt, and to enable the sheriff to ascertain the bounds of his duty, if execution issues.”
Carroll v. Hinchley, 316 Mass. 724, 731 (1944), quoting Jonson’s Case, 242 Mass. 489, 494 (1922), cited in Sax, 53 Mass.App.Ct. at 773.
• The same observation might be made as to the Auto Damage Claim. Simultaneously with the Complaint for Contempt, however, the plaintiff also filed a document entitled, “Plaintiffs Emergency Motion,” seeking a Court order permitting him to withhold rent pending the repair of the front of the building. It is my understanding that the parties have reported to the Court an agreement for a rent credit, and that this issue is, for all intents and purposes, resolved.
The Dumpster Claim comes somewhat closer to the “clear and unequivocal command” of the modified injunction, but still, I think, not sufficiently close to constitute a contempt. To repeat the pertinent provision of the injunction:
*14 defendant shall be entitled, again in accordance with the lease to enter the parking lot to empty and clean the dumpster, but said entry shall be completed by no later than 8:00 A.M. on the days upon which said emptying and cleaning is to be accomplished.
The injunction did not require that the dumpster be emptied according to a particular schedule, or in a particular way. Indeed, the terms of this provision are not mandatory, but permissive: the landlord is allowed. to enter the parking lot, before 8:00 a.m., to empty the dumpster. The history of the modification makes this even clearer: faced with an unqualified no-entry order, the landlord sought, and obtained (over the plaintiffs objection), the modification. Both in its language, and in the parties’ reasonable understanding of it, this was an order addressed to whether or not the landlord could enter and use the parking lot, not to how often the dumpster was to be emptied.[3]
The Parking Lot Use Claim stands on a different footing. The injunction was clear that the landlord may enter the parking lot (a) for snow and ice removal, and (b) to empty the dumpster before 8:00 am., and for no other purpose (at least, not without the plaintiffs permission). It seems clear from the evidence that the landlord’s property manager has been using the parking lot as his (or at least his vehicle’s) pied a terre when visiting the property. This is the sort of “clear and undoubted disobedience of a clear and unequivocal command” of which a contempt is made, and I find the defendant in contempt on this ground.
The question remains what remedy is appropriate. I believe a compensatory fine in the amount of $2,500 will adequately redress the disruption and inconvenience caused by the defendant’s and his agents’ unlawful use of the parking lot. A prospective fine of $100 per unlawful entry should adequately deter future violations.
Attorneys fees are frequently appropriate in a contempt proceeding. Here, the ratio of successful claims for contempt to other claims which were, on their face, subject to a motion to dismiss was relatively low. In these circumstances, no award of attorneys fees is appropriate.

ORDER FOR JUDGMENT

For the foregoing reasons, judgment will enter as follows.
1. The defendant is adjudged to be in contempt of the preliminary injunction dated August 5, 2002, as modified on October 24, 2002, by reason of his agents’ non-permissive use of the rear parking lot at 141 Highland Street, Worcester.
2. As a compensatory fine for past contempts, the defendant is to pay the plaintiff $2,500.00 within ten days hereof.
3. As a coercive fine to prevent future contempts, the plaintiff shall be entitled to $100.00 per each proven, future, non-permissive use of the parking lot by the defendant or his agents.

The hearing began with a discussion, prompted by the defendant’s Motion to Dismiss, concerning what issues were properly the subject of a complaint for contempt, i.e., what did, and did not, represent a violation of the injunction (see further discussion below). This discussion may well have informed the presentation of evidence thereafter.

E.g., ¶7 (“Quiet Enjoyment”).

None of this, of course, is to say that the defendant has, or has not, lived up to his obligations under the lease. The present decision adjudicates only the Complaint for Contempt, not the parties’ contract rights. Cf. Sax, 53 Mass.App.Ct. at 773.